**CMCB ENTERPRISES, INC.,**
**Plaintiff–Appellee,**

v.

**William E. FERGUSON, Craig Camozzi, and Basic Food Group, Inc., Defendants–Appellants.**

No. 03CA1378.

Colorado Court of Appeals, Div. I.

Feb. 24, 2005.

Certiorari Denied June 27, 2005.

Law Offices of Theodore W. Brin, Theodore W. Brin, Denver, Colorado, for Plaintiff-Appellee.

Robinson, Waters & O'Dorisio, P.C., Otto K. Hilbert, II, Kimberly Bruetsch, Denver, Colorado, for Defendants-Appellants.

MARQUEZ, J.

In this dispute over past due rent under a restaurant lease, defendants, Basic Food Group, Inc. (Basic), William E. Ferguson, and Craig Camozzi, appeal from a judgment in favor of plaintiff, CMCB Enterprises, Inc. We affirm.

Plaintiff, the owner of a restaurant property in Littleton, entered into a twenty-five-year written lease in December 1975 with a third party. In December 1991, plaintiff filed a Uniform Commercial Code financing statement (UCC-1), which provided it a security interest in the furniture, fixtures, and equipment located at the property.

In May 1993, the lease was assigned to Bocci's Foods, Inc. (Bocci's), which was owned and operated by defendants Ferguson and Camozzi. Both Ferguson and Camozzi signed personal guaranties of the performance by Bocci's and later started a restaurant and bar called Duggan's Grill on the leased premises.

At the end of 1993, Bocci's owned and operated three restaurants, 17th Avenue Bar & Grill, Marina Landing, and Duggan's Grill. In December 1993, Ferguson and Camozzi created three other corporations, Avenue Bar & Grill, Inc.; Marina Landing, Inc.; and Duggan's Grill, Inc.

In January 1994, Ferguson and Camozzi incorporated Basic, which became the management company of the three restaurants. Basic's 1994 tax return reflects that Bocci's transferred its assets and liabilities to the four new entities.

In September 1994, Bocci's assigned the lease to Duggan's Grill, Inc., with plaintiff's consent. This assignment provided that "the Assignor covenants and agrees that this Assignment shall not relieve nor release Assignor from any of the obligations contained in the Lease in the event of default by the Assignee."

In December 1996, Ferguson and Camozzi wanted to assign the lease to James and Susan Robson, but plaintiff did not approve the assignment. The record reflects that the Robsons, nevertheless, operated Duggan's Grill on the leased property until approximately August 1999, when plaintiff evicted them for nonpayment of rent.

Plaintiff brought this action in August 1999. Although the original complaint is not part of the record, the briefs on appeal indicate that Duggan's Grill, Inc., was named as a defendant. The amended complaint named Bocci's, Basic, Marina Landing, Inc., Ferguson, and Camozzi. It stated that "Duggan's Grill, Inc., is out of business and has no assets and accordingly, has been deleted as a defendant in this amended complaint." Plaintiff sought damages for unpaid rent and, under a theory of successor liability, alleged that Bocci's, Basic, and Marina Landing, Inc.,

were one and the same entity or were successor entities.

Following a bench trial, the court found that Ferguson and Camozzi had control over Basic at all relevant times; that they knew that the original UCC–1 was null and void; that plaintiff did not extend its UCC–1 after it expired in December 1996; and that Ferguson and Camozzi were responsible under their personal guaranties. The court concluded that Basic was a mere continuation of Bocci's and that judgment should enter against Basic.

Specifically, the court found that the rent due plaintiff under the lease through March 2001 was $160,177; Ferguson was liable on his personal guaranty in the amount of $28,125, plus interest; and Camozzi was liable on his personal guaranty in the amount of $16,875, plus interest. It also found that the affirmative defense of failure to mitigate damages had not been proved. Additionally, it found that there was no evidence presented of a release granted in favor of Duggan's and that Duggan's was simply dismissed from the lawsuit without prejudice because plaintiff did not believe it held any assets.

### I. Mere Continuation

■ Defendants contend that the trial court erred in concluding that Basic was liable under the lease as a mere continuation of Bocci's. We find no error.

■ Generally, a corporation that acquires the assets of another corporation does not become liable for the debts of the selling corporation. However, successor corporations have been held liable if: (1) there is an express or implied assumption of liability; (2) the transaction results in a merger or consolidation of the two corporations; (3) the purchaser is a mere continuation of the seller; or (4) the transfer is for the fraudulent purpose of escaping liability. *Alcan Aluminum Corp. v. Elec. Metal Prods., Inc.*, 837 P.2d 282, 283 (Colo.App.1992); *Ruiz v. ExCello Corp.*, 653 P.2d 415 (Colo.App.1982).

■ The mere continuation exception applies when there is a continuation of directors, management, and shareholder interest and, in some cases, inadequate consideration. *Alcan Aluminum Corp. v. Elec. Metal Prods., Inc., supra,* 837 P.2d at 283; *see Bud Antle, Inc. v. E. Foods, Inc.,* 758 F.2d 1451, 1458 (11th Cir.1985)(purchasing corporation is merely a "new hat" for the seller, with the same or similar management and ownership). Accordingly, the test for this exception is whether the purchasing corporation is, in effect, a continuation of the selling corporation, and not whether there is a continuation of the seller's business operation. *Alcan Aluminum Corp. v. Elec. Metal Prods., Inc., supra.*

Here, defendants assert that this exception "presuppose[s] an acquisition of all, or at least a substantial portion, of the assets of one corporation by another corporation." They point out that the 1994 tax return reflects that Basic received $12,520 of Bocci's $927,745 worth of assets or only 1.3 per cent. In support, defendants cite *Ruiz v. ExCello Corp., supra,* which, in their view, holds that the exceptions apply "where one company sells or otherwise transfers all its assets to another company."

However, defendants read *Ruiz* too broadly. The division stated that as a general rule "where one company sells or otherwise transfers all its assets to another company the latter is not liable for the debts and liabilities of the transferor," with four exceptions. *Ruiz, supra,* 653 P.2d at 416 (quoting *Kloberdanz v. Joy Mfg. Co.,* 288 F.Supp. 817 (D.Colo.1968)). While the *Ruiz* opinion includes mere continuation among the exceptions, it does not discuss that exception and does not require that all or substantially all the corporation's assets be transferred before an exception may apply.

The Tenth Circuit Court of Appeals has held that under Oklahoma law, a prerequisite for the imposition of liability against a corporation as a mere continuation of a predecessor is a sale or transfer of all or substantially all the assets of the latter to the former. *Williams v. Bowman Livestock Equip. Co.,* 927 F.2d 1128 (10th Cir.1991). However, another federal circuit court of appeals has held that the plaintiff need only demonstrate a transfer of corporate assets, and it is not necessary, as a matter of law, that a single

corporation acquire all the divesting corporation's assets, though that may be a pertinent factor. *Ed Peters Jewelry Co. v. C & J Jewelry Co.,* 124 F.3d 252 (1st Cir.1997); *see Patin v. Thoroughbred Power Boats, Inc.,* 294 F.3d 640 (5th Cir.2002).

Here, even if we assume, without deciding, that a transfer of substantially all the assets is a factor in imposing liability, such a transfer in effect occurred. *See Alcan Aluminum Corp. v. Elec. Metal Prods., Inc., supra; see also Ed Peters Jewelry Co. v. C & J Jewelry Co., supra* (the substance of the overall transaction controls, rather than its form).

The trial court here found, with record support, that Basic is a mere continuation of Bocci's. It found that both corporations have the same officers, directors, and shareholders, "although the shareholders' percentages apparently varied over time." The court further noted that Ferguson and Camozzi controlled and dominated both corporations, and that the "business operations of both corporations are the same in that Mr. Ferguson and Mr. Camozzi operated their three restaurants first under Bocci's and then under Basic Food Group." According to the court, inadequate assets were left in the old corporation, Bocci's, preventing it from being able to pay its debts, and Ferguson and Camozzi commingled the assets and liabilities of Basic, Bocci's, and Duggan's. We conclude the record supports the court's findings.

The record includes evidence that (1) Ferguson and Camozzi were the officers, directors, and shareholders of both Bocci's and Basic; (2) Ferguson testified that Basic was the same as Bocci's; (3) both Bocci's and Basic at some time had been the same corporation; (4) Bocci's had over $900,000 in assets as of December 31, 1993, and it transferred all its assets to Basic and the three corporations that operated its three restaurants; (5) Basic's 1994 tax return reflected total assets of $444,716; (6) Basic paid some of the debts owed by Duggan's Grill and other restaurants owned by Bocci's; (7) Ferguson and Camozzi operated the same three restaurants under both Bocci's and Basic; (8) to secure a loan for Basic, Ferguson, as its president, provided the lender with a security interest in "100% of the Fixtures in Debt-or's [Basic's] business known as Duggan's Grill as well as 100% of the furniture, equipment and inventory"; and (9) Basic paid no compensation to Duggan's Grill for its use of Duggan's assets to borrow money.

Under these circumstances, we conclude that the trial court did not err in finding that Basic is a mere continuation of Bocci's and in imposing liability on that basis.

## II. Personal Guaranties

■ Defendants contend that the express language of the guaranties renders them null and void. We disagree.

■ Contract interpretation is a question of law that is reviewed de novo. The primary goal of contract interpretation is to determine and give effect to the intent of the parties, and that intent is to be determined primarily from the language of the instrument itself. *Ad Two, Inc. v. City & County of Denver,* 9 P.3d 373 (Colo.2000).

Here, however, defendants dispute not the interpretation of the guaranties, but rather the effect of events surrounding their execution.

■ Reversal of the trial court's findings of fact is warranted only when they are so clearly erroneous as to find no support in the record. *Citizens Progressive Alliance v. Southwestern Water Conservation Dist.,* 97 P.3d 308, 314 (Colo.App.2004).

■ The trier of fact, and not the appellate court, must determine all issues relative to the sufficiency, credibility, and weight of the evidence. *See Cottonwood Hill, Inc. v. Ansay,* 709 P.2d 62 (Colo.App.1985).

### A. Recital Language

Defendants' initial contention is that as written, paragraph A of the recitals "clearly contemplates the execution of a new lease agreement, dated as of May 6, 1993." Thus, defendants argue that because no new lease was executed, there is "no lease to which the Guarantees apply," and the trial court erred in holding Ferguson and Camozzi liable as guarantors of the original 1975 lease. We disagree.

Paragraph A of the recitals states:

Bocci's Foods, Inc. now known as "Tenant" under the Lease dated December 9, 1975[,] an amendment to the lease dated March 17, 1981 and the second amendment to the lease dated November 19, 1991 and assignment of Lease dated May 6, 1993 desires to induce Landlord to enter into a written Lease bearing even date herewith ("the Lease") with Tenant whereby Landlord leases to tenant and tenant leases from landlord premises located in the County of Arapahoe, State of Colorado, more particularly described in the lease.

The trial court found that these guaranties were intended to replace plaintiff's UCC–1 so that Ferguson and Camozzi could obtain start-up financing with unencumbered furniture, fixtures, and equipment. It also found that the personal guaranties were never vitiated or otherwise voided.

Evidence was presented that (1) there was only one lease in 1975, and the recital language of the guaranties refers to that lease, not a new lease; (2) the May 1993 assignment of the 1975 lease and the guaranties were executed on the same day; and (3) Ferguson and Camozzi wrote a letter to plaintiff offering a guaranty in exchange for assignment of Bocci's lease to Duggan's Grill.

Because there was evidence that no new lease was contemplated and that the guaranties applied to the 1975 lease, we will not reverse the trial court's determination.

### B. Termination of the Guaranties

██ Defendants also contend that because plaintiff had a UCC–1 in effect and in first position when Camozzi and Ferguson signed the guaranties and because plaintiff did not release this UCC–1, the guaranties, by their own terms and the conduct of the parties, terminated upon their execution. We disagree.

The trial court found with record support: [The] guaranties provided by Ferguson and Camozzi state at paragraph seven that they will be terminated if and when the plaintiff obtains a UCC–1 in a first position on the furniture, fixtures and equipment at the Premises. This language and the subsequent actions of Ferguson and Camozzi

clearly demonstrate that they understood that the UCC–1 filed on December 5, 1991 was no longer in effect.

Evidence was introduced that (1) Ferguson and Camozzi wanted to replace plaintiff's UCC–1 with the guaranties; (2) Ferguson and Camozzi granted a creditor a priority lien on the same assets covered by plaintiff's UCC–1; (3) Ferguson also took a personal lien on the same assets listed in plaintiff's UCC–1; (4) plaintiff and defendants exchanged letters in which Ferguson and Camozzi demanded that plaintiff immediately release any claim under the UCC–1; (5) defendants secretly sold the Duggan's Grill restaurant operation to the Robsons; (6) plaintiff did not file a continuation statement of its UCC–1 after its expiration on December 5, 1996; (7) plaintiff never released its UCC–1 because the debtor made no such request and it is "normally the role of the debtor to remove [the UCC–1]"; (8) there was a court action in which the creditor acquired ownership of the "furniture, fixtures, and equipment" through the benefit of its UCC–1; and (9) Camozzi was aware that plaintiff was ready to release the UCC–1, but did not execute a release because plaintiff and its management company were relying on a lender to complete the proper paperwork to have the UCC–1 released in the regular course of making a loan.

Because there was evidence that the guaranties were still in effect, we will not reverse the trial court's determination.

### C. Mitigation of Damages

██ Defendants next contend that under § 3 of the guaranties, plaintiff had the obligation to make good faith attempts to mitigate its damages prior to proceeding against the guarantors, and failed to do so. We are not persuaded.

██ Defendants, as tenants of the premises, had the burden of proving failure to mitigate. *Del E. Webb Realty & Mgmt. Co. v. Wessbecker*, 628 P.2d 114, 116 (Colo.App. 1980).

Under § 3 of the guaranties, plaintiff agreed "that in the event of default by Tenant, [plaintiff] has a duty to attempt to

mitigate damages using normal, common procedures" and this "good faith attempt at mitigation shall be commenced prior to proceeding against the Guarantor, but the completion of the mitigation, such as releasing the space, is not required prior to commencing or finalizing action against the Guarantor." The trial court found that "plaintiff did mitigate its damages and that the affirmative defense of failure to mitigate damages has not been proved by a preponderance of the evidence."

Defendants, however, argue that the "uncontroverted trial testimony by [plaintiff's] representative" established that its "attempts at mitigation did not begin until well after the eviction of Duggan's Grill was complete, the unlawful detainer action for which had been commenced simultaneously with a damages claim on the Guarantees." We conclude the record supports the trial court's finding.

Here, there was evidence that plaintiff sent a demand for payment of rent or possession of premises to Ferguson, Camozzi, and "all other persons occupying such premises" so that plaintiff could regain possession of the premises in an effort to re-rent. Additionally, plaintiff's property manager testified that (1) plaintiff provided the lessee with several notices in addition to a three-day notice in its demand for payment of rent or possession; and (2) before the Robsons moved out of the premises and upon notification from plaintiff, plaintiff's real estate broker began looking for a replacement tenant. The broker testified that he contacted existing restaurant owners, advertised the property to the brokerage community that represents other restaurant users, sent out broadcast e-mails, placed ads in the paper, distributed a brochure regarding the premises to potential tenants and restaurant operators, and posted a "for lease" sign for the premises.

Thus, the evidence supports the trial court's finding that plaintiff adequately attempted to mitigate its damages.

### III. Release

Defendants' final contention is that, through its release of Duggan's Grill, Inc., plaintiff destroyed joint and several liability under the lease, resulting in defendants' being liable only for "their proportionate share of the [l]ease indebtedness." We disagree.

A release is the relinquishment of a claim to the party against whom such claim was enforceable. A general release is an instrument by which one party relinquishes all its claims against another for consideration. Once a claim is released, the release bars the injured party from seeking further recovery. *Artery v. Allstate Ins. Co.*, 984 P.2d 1187, 1191 (Colo.App.1999).

A court is to construe a release to effectuate the manifest intention of the parties. Such construction rests on good sense and plain understanding of the words used and the acts directed to be performed. *Neves v. Potter*, 769 P.2d 1047 (Colo.1989).

Defendants' contention is based on the language in the amended complaint. However, the amended complaint merely states that "Duggan's Grill, Inc. is out of business and has no assets and, accordingly, has been deleted" as a defendant. There is no evidence in the record that plaintiff intended to relinquish its claims against Duggan's in exchange for payment from Duggan's. Rather, the complaint states that Duggan's was deleted because it had no assets and was out of business. This deletion does not dispose of any claims that plaintiff may have against Duggan's.

Accordingly, because plaintiff's deletion of Duggan's as a defendant in the amended complaint did not constitute a release, the damages award against defendants is proper.

The judgment is affirmed.

Judge CARPARELLI and Judge LOEB concur.