**Jan MARQUARDT, Plaintiff–Appellee,**

v.

**Frank L. PERRY, Defendant–Appellant.**

**No. 08CA0057.**

Colorado Court of Appeals,
Div. III.

Dec. 11, 2008.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

Bloom Murr & Accomazzo, P.C., Joseph A. Murr, Daniel R. Delaney, Denver, Colorado, for Plaintiff–Appellee.

Moye White LLP, Eric B. Liebman, Angela D. DeVine, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

In this case involving the purported guarantee of an investment, defendant, Frank L. Perry, appeals the judgment following a bench trial in favor of plaintiff, Jan Marquardt, on her claim for promissory estoppel. We affirm.

According to the trial court's findings, Perry and Marquardt had been personal friends for over thirty years. During part of that time, Perry had been successfully investing funds with an out-of-town stockbroker. When a new opportunity arose for Perry to invest in a particular trade that promised returns in excess of forty percent, he lacked the entire sum he needed to complete the investment. He attempted to refinance his home, but was unable to obtain funds in time to make the trade deadline.

Perry inquired whether Marquardt was interested in investing the $200,000 he needed to complete the trade. Because time was of the essence, the funds necessary to complete the transaction would have to be wire transferred by Marquardt into the account the stockbroker maintained for Perry.

Marquardt contacted the stockbroker and obtained wire transfer instructions. Several hours later, Perry sent an e-mail to Marquardt, which stated:

> You will get the profit, 40% or $80K out of the trade. I'll pay the taxes, if Brad can't handle the trade in a manner that you end up with them for your profit.

> In the interest of you sleeping better, given that the trade is through my account, I'll guarantee your $200,000.

Approximately an hour after receiving the e-mail, Marquardt wired the funds to the stockbroker.

The trade was fraudulent, resulting in the loss of Marquardt's investment, and the stockbroker was ultimately convicted of wire fraud. Marquardt demanded that Perry honor his guaranty, and when he refused, she commenced this action for breach of contract and promissory estoppel.

The parties tried the breach of contract claim to a jury, which found in favor of Perry. The jury determined by special interrogatory that, while Perry had offered to guarantee Marquardt's investment, Marquardt had not accepted Perry's offer.

Thereafter, the court conducted a bench trial on the equitable promissory estoppel claim. Both parties testified, and the trial court received additional evidence relevant to the claim. The trial court found for Marquardt and ordered Perry to pay her $200,000, plus statutory interest. This appeal, which involves only the trial court's determination on the promissory estoppel claim, followed.

Perry contends that the trial court erred in granting equitable relief on the promissory estoppel claim because its determination is inconsistent with the jury's verdict on the breach of contract claim and the court's determination deprived him of his right to the jury's findings. We disagree.

### I. Standard of Review

The parties disagree on the applicable standard of review. Perry asserts that the proper standard of review is de novo, but Marquardt contends that we should review only for an abuse of discretion.

■ Generally, the power to fashion equitable remedies lies within the discretion of the trial court, and its determination will not be disturbed absent an abuse of discretion. *La Plata Medical Ctr. Assocs., Ltd. v. United Bank*, 857 P.2d 410, 420 (Colo.1993). However, Perry argues that the trial court's equitable remedy is directly in conflict with the jury's findings of fact. He likens the situation to one in which a trial court grants a judgment notwithstanding the verdict, where the proper standard of review is de novo. *See Western Fire Truck, Inc. v. Emergency One, Inc.*, 134 P.3d 570, 578 (Colo.App.2006).

We need not resolve this question because the result would be the same under either

standard. For purposes of our analysis, because it grants Perry the more liberal standard of review, we will review de novo.

## II. Contract and Promissory Estoppel Claims

### A. Breach of Contract

To prove a breach of contract claim, a plaintiff must prove: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *See Western Distributing Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo.1992). Only the first element, the existence of a contract, is relevant here.

A contract is formed when an offer is made and accepted, *see Scoular Co. v. Denney,* 151 P.3d 615, 617 (Colo.App.2006), and the agreement is supported by consideration. *See Clark v. Scena,* 83 P.3d 1191, 1194 (Colo.App.2003); *see also Denver Truck Exch. v. Perryman,* 134 Colo. 586, 592, 307 P.2d 805, 810 (1957). Acceptance of an offer is generally defined as words or conduct that, when objectively viewed, manifests an intent to accept an offer. *Scoular,* 151 P.3d at 615, 619.

### B. Promissory Estoppel

Colorado courts have adopted the definition of promissory estoppel found in the Restatement (Second) of Contracts § 90 (1981). *Vigoda v. Denver Urban Renewal Authority,* 646 P.2d 900, 905 (Colo.1982). Promissory estoppel is an extension of the basic contract principle that one who makes a promise must be required to keep it. *Patzer v. City of Loveland,* 80 P.3d 908, 912 (Colo.App.2003).

The elements of a promissory estoppel claim are: (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promise; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice. *See Nelson v. Elway,* 908 P.2d 102, 110 (Colo.1995); Restatement § 90.

Reliance can be shown where a party alters his or her position as a consequence of another's conduct. *City of Thornton v. Bijou Irrigation Co.,* 926 P.2d 1, 77 n. 72 (Colo.1996). Reasonable reliance is generally conduct or action that would be reasonable for a prudent person to do or take under the circumstances. *See Field v. Mans,* 516 U.S. 59, 63, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). Whether a plaintiff has justifiably relied on a defendant's promise is an issue of law for the trial court. *Nelson,* 908 P.2d at 110; *see also Atsepoyi v. Tandy Corp.,* 51 F.Supp.2d 1120, 1126 (D.Colo.1999).

Promissory estoppel and breach of contract are related concepts. Promissory estoppel evolved from contract law during the twentieth century. 4 *Williston on Contracts* § 8:6 (4th ed.1992). However, recovery in Colorado on a theory of promissory estoppel is permissible when there is no enforceable contract. *Wheat Ridge Urban Renewal Authority v. Cornerstone Group XXII, L.L.C.,* 176 P.3d 737, 741 (Colo.2007). Thus, if a plaintiff fails to prove a breach of contract claim, he or she may nevertheless be able to recover on a promissory estoppel claim. *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 712 (Colo.1987).

## III. Inconsistent Verdicts

Perry does not dispute that, as a general matter, a plaintiff may recover on a promissory estoppel theory even if he or she has not prevailed upon a breach of contract claim. However, he asserts that the trial court's determination here on the equitable promissory estoppel claim is inconsistent with the findings of the jury on the legal breach of contract claim and the result of the trial court's decision is to deprive him of his right to the jury's findings. We disagree.

### A. Federal Law

Perry relies upon federal law in which various federal courts, including the United States Supreme Court, have dealt with similar issues. In *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 508, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), the Court held that,

when the parties have claims pending for both legal and equitable relief, the jury's factual findings on the legal claims are generally binding on the trial court when it rules on the equitable claims. The Court based its ruling on the Seventh Amendment's guarantee of the right to a jury trial. *Id.*

Subsequent federal cases have elaborated upon that concept. In *Ag Services of America, Inc. v. Nielsen,* 231 F.3d 726, 731 (10th Cir.2000), the court stated that, under the Seventh Amendment, a federal trial court may not substitute its judgment of the facts for that of the jury, particularly when a case involves both a jury trial on legal issues and a bench trial on equitable claims. Thus, when there are essential factual issues that are central to both types of claims, those factual issues must first be tried to the jury, and the court is bound by the jury's determination of factual issues common to both the legal and equitable claims. *Ag Services,* 231 F.3d at 730 (citing *Skinner v. Total Petroleum, Inc.,* 859 F.2d 1439, 1442–43 (10th Cir. 1988)). The court noted that the same result would obtain under issue preclusion principles, because the legal claims, having been tried first, would preclude relitigation of identical issues and a later different determination by the court. *Ag Services,* 231 F.3d at 730; *see Butler v. Pollard,* 800 F.2d 223, 224–26 (10th Cir.1986).

The *Ag Services* court formulated a test to determine whether a trial court's determination on equitable issues is precluded by a previous jury verdict:

> The true test is whether the jury verdict by necessary implication reflects the resolution of a common factual issue. If so, the district court may not ignore that determination, and it is immaterial whether, as here, the district court is considering equitable claims with elements different from those of the legal claims which the jury had decided. . . .

*Ag Services,* 231 F.3d at 732.

### B. State Law

As Marquardt points out, "the [Seventh] Amendment applies only to proceedings in courts of the United States, and does not in any manner whatever govern or regu-late trials by jury in state courts, or the standards which must be applied concerning the same." *Minneapolis & St. Louis R.R. Co. v. Bombolis,* 241 U.S. 211, 217, 36 S.Ct. 595, 60 L.Ed. 961 (1916). Nevertheless, in *Soneff v. Harlan,* 712 P.2d 1084, 1088 (Colo. App.1985), a division of this court cited *Beacon Theatres* in concluding that the trial court's consideration of equitable claims, which occurred during the jury's deliberation of legal claims, was not erroneous because the trial court's grant of specific performance was not inconsistent with the jury's ultimate award of damages. Thus, while *Beacon Theatres* may not be binding upon us, the general principles it announces are recognized in *Soneff,* and are consistent with principles of issue preclusion. *See In re Tonko,* 154 P.3d 397, 405 (Colo.2007) (issue preclusion bars relitigation of a factual matter already decided in a prior proceeding when the issue sought to be precluded is identical to an issue that has been previously actually and necessarily determined).

The law regarding consistency of jury verdicts in civil cases is also somewhat analogous. In determining whether a jury's verdict is inconsistent, courts must determine if a reading of the record reveals any basis for the verdict. *Morales v. Golston,* 141 P.3d 901, 906 (Colo.App.2005). The task of the reviewing court is to examine the instructions, the verdict forms, and the evidence, and to determine from the record whether there was competent evidence from which the jury logically could have reached its verdict. *Id.* Also, if there is a view of the case that makes the jury's answers consistent, the verdict must be resolved in that way. *Id.* While this test applies in examining a jury's verdict on differing claims, it is compatible with the test articulated in *Soneff.*

Perry advocates use of the federal standard. We perceive no conflict between that standard and the generally applicable state standards, and thus, we will apply it here. Accordingly, we must determine whether the jury verdict by necessary implication reflects the resolution of a common factual issue.

### C. Common Factual Issues

#### 1. As a Matter of Law

■ We first reject Perry's assertion that acceptance in the breach of contract context is the equivalent of reliance in the promissory estoppel context, and that the jury's finding that Marquardt failed to accept Perry's offer precludes a finding of reliance as a matter of law.

Perry relies upon *Price v. Public Service Co.,* 1 F.Supp.2d 1216, 1227 (D.Colo.1998), in which the court, generally citing 3 Eric Mills Holmes, *Corbin on Contracts* § 8.1 (Joseph M. Perillo, ed.1996), stated, "The concept of promissory estoppel runs parallel to that of an express contract: a statement reasonably expected to be considered a promise is the counterpart to an offer; reliance to one's detriment is the counterpart to acceptance and consideration."

To the extent Perry asserts that the jury's determination here that Marquardt's failure to accept his offer precludes any reliance upon the promise, we think Perry reads too much into the *Price* court's statement. We understand the court's statement to indicate that there are parallels between the two legal theories. We do not perceive the court to have held that when a contract claim fails because the promisee does not accept an offer, such failure precludes reliance as a matter of law. Indeed, the authority the *Price* court relies upon states a contrary proposition. *See 3 Corbin on Contracts* § 8.1 (promissory estoppel) ("[T]here have always been many informal promises that are enforceable without any expression of assent by the promisee and without any consideration in the sense of an equivalent given in exchange. These informal contracts are not 'bargains' and are not made by the process of offer and acceptance."); *id.* § 8.3 ("[A]n informal promise may be enforceable by reason of action in reliance upon it, even though that action was not bargained for by the promisor and was not performed as an agreed exchange for the promise.").

In Colorado, promissory estoppel is available as a theory of recovery when breach of contract fails. *See Continental Air Lines,* 731 P.2d at 710. Thus, a jury's finding of no contract formation does not preclude a successful promissory estoppel claim. *Id.; see also Trujillo v. Denver Zoological Foundation, Inc.,* 2007 WL 2889706 *6 (D.Colo. No. 05–CV–00089–LTB, Sept. 26, 2007) (unpublished order) ("Although a contract requires acceptance and consideration, Colorado law recognizes that justified detrimental reliance on a promise can act as a substitute.").

*Haselden–Langley Constructors, Inc. v. D.E. Farr & Associates, Inc.,* 676 P.2d 709, 711 (Colo.App.1983), does not hold to the contrary, as Perry contends. There, a division of this court noted that, if a general contractor does not rely upon the bid of a subcontractor, promissory estoppel cannot be invoked against the subcontractor. Contrary to Perry's contention, the court there did not equate the lack of reliance with the lack of acceptance. It merely indicated that an attempt to accept a bid on terms materially different from the original bid constituted a counteroffer and not an acceptance, and that in such a situation, there is neither an enforceable contract nor a viable promissory estoppel claim because there could be no reliance under those circumstances.

*Dumas v. Infinity Broadcasting Corp.,* 416 F.3d 671, 678 (7th Cir.2005), upon which Perry also relies, is likewise distinguishable. There, following the breakdown of discussions for possible employment, the putative employee pursued claims for breach of contract and promissory estoppel. The trial court entered summary judgment for the putative employer, concluding that the documentary evidence fell short of establishing an offer, an acceptance, and a meeting of the minds.

■ The appellate court affirmed. While the court stated that "[t]he absence of the essential elements of a contract ... effectively foreclosed any legitimate promissory estoppel argument," the court specifically noted that there was no offer, as well as no acceptance. *Id.* Where there is no offer, that is, no proposed promise, a fortiori there cannot be a valid promissory estoppel claim. We therefore do not read that case to hold that the absence of an acceptance alone precludes reliance.

Other cases on which Perry relies are likewise distinguishable.

### 2. As a Matter of Fact

■ We reject Perry's assertion that the jury's verdict that Marquardt failed to accept his offer by necessary implication resolves her reliance claim as a matter of fact.

In determining this issue, we must analyze what findings were actually made by the jury or were necessarily implicit in its verdict, and whether the trial court's subsequent findings and conclusions conflict with the jury's determination. *See Ag Services*, 231 F.3d at 731. As previously noted, it is not determinative that elements of the claims for relief are different. *Id.* at 732.

Marquardt contended that she had accepted Perry's offer by wiring funds. Under the instructions the jury received, acceptance was defined as "an expression of agreement to the same terms stated in the offer by the person to whom the offer was made." The jury found by special interrogatory, without additional comment, that Marquardt did not accept Perry's offer.

The trial court found that, when wiring her money into Perry's account, Marquardt relied upon the plain language of Perry's email, her faith in him from their previous friendship, her understanding of his previous business successes, and his ability to make good on such a guarantee. It found that Perry made a promise to guarantee her investment and that he should reasonably have expected Marquardt to rely upon the promise. It found Perry should have expected his promise to induce action by Marquardt, particularly because she had not yet wired the funds into his account when she received the e-mail and had expressed her reservations regarding the investment, and because he wanted to "help her sleep better."

We do not agree that the trial court's finding of reliance is at odds with the jury's determination that Marquardt did not formally accept Perry's offer. Instead, the court resolved a separate factual issue that is different from the jury's finding of no acceptance. As noted, the jury instruction defined acceptance as "an expression of agreement to the same terms stated in the offer by the person to whom the offer was made." The jury could have read the instruction to mean that an acceptance required an oral or written communication from Marquardt to Perry before wiring the funds. Although an acceptance of an offer can be accomplished by words *or* conduct that, when objectively viewed, manifests an intent to accept an offer, *see Scoular*, 151 P.3d at 619, the instruction here, which Perry tendered, does not specifically say that Marquardt could accept Perry's offer by some conduct on her part. Rather, the jury, utilizing the definition provided, could have reasonably found that because Marquardt did not orally or in writing communicate to Perry that she accepted his offer, a contract was not formed.

Indeed, Marquardt testified at the jury trial that she did not orally or in writing communicate to Perry that she had wired the funds. Moreover, Perry argued in closing that there was no oral or written acceptance:

> Her saying she accepted by sending money to a third person and not telling Mr. Perry about it, doesn't square with an expression of an agreement to the same terms stated in the offer by the person to whom the offer was made. . . . There's [sic] lots of different ways to accept . . . but you're doing it with the person that's making the offer to you. It's a communication back to that person saying you accept. . . .

We also find it instructive that Marquardt requested the trial court to instruct the jury that "if the offer is silent with regard to the means of acceptance, the offer may be accepted by any reasonable means under the circumstances," to which Perry objected. The trial court declined to give an instruction containing that language, and in light of Perry's closing argument, it is evident that he exploited the absence of such language to argue there was no acceptance.

In contrast to the acceptance instruction given here and the jury's determination, reliance can be shown where a party alters his or her position as a consequence of another's conduct. *Bijou*, 926 P.2d at 77 n. 72. Perry did not introduce any evidence to rebut Marquardt's testimony that, after she received his e-mail, she relied on his promise to guar-

antee her funds and that she did so by wiring her funds to his account.

Thus, the trial court's finding regarding Marquardt's detrimental reliance and change of position by wiring the funds to Perry's account is factually different from the jury's determination that Marquardt did not accept the terms of the offer. We accordingly conclude that the trial court did not determine the identical issue that the jury had already resolved. *See In re Tonko,* 154 P.3d at 405.

For these reasons, we hold that the trial court's findings and conclusions are not inconsistent with the jury's determination and, therefore, the court did not deprive Perry of his right to the jury's findings.

The judgment is affirmed.

Judge LOEB and Judge ROMÁN concur.