24CA0480 Litterer v Vail 01-30-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0480
Summit County District Court No. 22CV30043
Honorable Reed W. Owens, Judge

John Litterer,

Plaintiff-Appellant,

v.

Vail Summit Resorts, Inc., a corporation, and Dwight McClure,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE MOULTRIE
Lipinsky and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 30, 2025

Bloch & Chapleau, LLC, Joseph D. Bloch, Trenton J. Ongert, Denver, Colorado, for Plaintiff-Appellant

Bryan Cave Leighton Paisner LLP, Michael J. Hofmann, Kaitlin M. DeWulf, Denver, Colorado, for Defendants-Appellees

¶ 1     Plaintiff, John Litterer, appeals the district court's judgment in favor of defendants, Vail Summit Resorts, Inc. (VSRI), and Dwight McClure (jointly, the Defendants).  We affirm.

## I.     Background

¶ 2     In December 2020, Litterer was injured in a snowboarder-snowmobile collision (the collision) at Breckenridge Ski Resort (Breckenridge).  Litterer snowboarded down the Wirepatch trail and turned left onto Peak 8 Road, a catwalk[1] approved for snowmobile traffic.  Dwight McClure, a VSRI employee, was operating a snowmobile owned by VSRI on Peak 8 Road.  He and Litterer collided at the intersection of the Wirepatch trail and Peak 8 Road.

¶ 3     An incident summary that VSRI prepared reported that, in the moments before the collision, McClure "saw movement above him in the trees," attempted to move the snowmobile to the edge of the road to avoid a collision, and began to bring the snowmobile to a stop.  At the time, McClure was driving the snowmobile at eighteen

---

[1] A "catwalk" is a trail, often used by maintenance or equipment vehicles, that winds down the entirety of a mountain or joins one slope to another.  *Anderson v. Vail Corp.*, 251 P.3d 1125, 1126 n.2 (Colo. App. 2010).

miles per hour — seven miles under the catwalk's twenty-five-mile-per-hour speed limit.

¶ 4     According to the incident summary, Litterer made a "high speed turn onto and across the [catwalk]" before impacting McClure's snowmobile.  Litterer's speed "was such that he could not stop or change direction."  In a later deposition, Litterer said he was only "one second" away from impact before he saw McClure and "had no time to make any moves" before the collision.

¶ 5     In May 2020, Litterer filed a complaint asserting claims against the Defendants for negligence, negligence per se, extreme and outrageous conduct, willful and wanton conduct, and reckless endangerment.  Litterer also asserted claims against VSRI for respondeat superior, negligent entrustment and/or supervision, negligent hiring, and premises liability.

¶ 6     The Defendants moved for partial dismissal of Litterer's claims, arguing that Colorado's Premises Liability Act (PLA) provided the exclusive remedy for Litterer's common law claims; Litterer failed to state a claim for extreme and outrageous conduct; Colorado does not recognize tort claims for willful and wanton conduct or reckless endangerment; and Litterer failed to allege

2

sufficient facts to support his claims for negligent entrustment and/or supervision and negligent hiring. The court dismissed Litterer's claims against VSRI for negligence, negligence per se, respondent superior, negligent entrustment and/or supervision, negligent hiring, and extreme and outrageous conduct because it concluded that the PLA preempted those claims. The court also dismissed Litterer's claims for willful and wanton conduct and reckless endangerment on the grounds that they are not cognizable causes of action in Colorado. However, the court declined to dismiss Litterer's premises liability claim against VSRI or Litterer's claims against McClure for negligence and extreme and outrageous conduct. And the court allowed Litterer to amend his complaint to include a claim against McClure alone for negligence per se. Following this ruling, Litterer sought leave to amend his complaint to include a claim for exemplary damages against the Defendants, which the court granted.

¶ 7     The Defendants then moved for summary judgment, asserting that Litterer's claims were barred by three liability waivers Litterer executed related to his purchase and use of resort season passes —

each otherwise known as an "Epic Pass"[2] — and that Litterer's claims for negligence per se and extreme and outrageous conduct failed as a matter of law.

¶ 8 The court determined that the exculpatory agreements related to Litterer's Epic Pass for the 2020-21 ski season were valid and enforceable and, therefore, barred Litterer's claims for negligence, negligence per se, and premises liability. The court further determined that (1) Litterer released all his claims against the Defendants when he purchased an Epic Pass for the 2022-23 ski season; (2) VSRI and McClure's conduct was insufficient as a matter of law to support a claim for extreme and outrageous conduct; and (3) Litterer's claim for exemplary damages could not stand without an underlying claim for damages.

¶ 9 On appeal, Litterer asserts the court erred by (1) granting summary judgment on his negligence per se claim against McClure because under *Miller v. Crested Butte, LLC*, 2024 CO 30 — which

---

[2] Vail Resorts Management Company (VRMC) — of which VSRI is a subsidiary — sells season passes for its resorts through www.EpicPass.com. After a customer purchases a season pass on that website, VRMC sends the customer a physical Epic Pass, "which is required to access Breckenridge Resort (and other resorts) for skiing."

the supreme court decided while this appeal was pending — negligence per se claims cannot be barred by exculpatory agreements; (2) finding that he released all his claims against the Defendants when he purchased the 2022-23 Epic Pass; (3) dismissing his claim for willful and wanton conduct against the Defendants; and (4) rejecting his claim for exemplary damages.

¶ 10 Because we conclude that Litterer's claims are barred by the liability waiver he signed when he purchased the 2022-23 Epic Pass, we do not reach his contention that the supreme court's decision in *Miller* announced a blanket rule prohibiting ski resorts from using exculpatory agreements to bar negligence per se claims based on *any* statute, not just the two statutes — the Ski Safety Act of 1979 and the Passenger Tramway Safety Act — at issue in that case. But we address — and reject — his remaining contentions in turn.

II. The 2022 Online Waiver Bars Litterer's Claims

¶ 11 The Defendants contend that Litterer released any existing claims against them when he executed the liability waiver included with his purchase of a 2022-23 Epic Pass. We agree.

5

¶ 12    Litterer agreed to three liability waivers when he purchased season passes and obtained a season pass card from VSRI in 2020 and 2022.  First, Litterer purchased an Epic Pass for the 2020-21 ski season through www.EpicPass.com.  When he purchased that pass, Litterer executed a "Release of Liability, Waiver of Claims, Assumptions of Risk Warning and Indemnification Agreement" on March 10, 2020 (the 2020 online waiver).  Second, VSRI sent Litterer a physical pass card that he was required to scan before boarding any chairlifts at Breckenridge.  The back of the card contained a "Release of Liability & Assumption of Risk Notice" (the 2020 physical waiver).  Third, Litterer purchased another Epic Pass for the 2022-23 ski season through www.EpicPass.com.  When he purchased the 2022-23 Epic Pass, Litterer executed a "Release of Liability, Waiver of Claims, Assumptions of Risk Warning and Indemnification Agreement" on November 20, 2022 (2022 online waiver).

¶ 13    The 2022 online waiver contained the following relevant provisions:

6

WARNING: PLEASE READ CAREFULLY BEFORE SIGNING! THIS IS A RELEASE OF LIABILITY WAIVER OF CERTAIN LEGAL RIGHTS INCLUDING THE RIGHT TO SUE OR CLAIM COMPENSATION.

In consideration for allowing the Participant to participate in the Activity [defined to include snowboarding], I FURTHER RELEASE AND GIVE UP ANY AND ALL CLAIMS AND RIGHTS THAT I MAY NOW HAVE AGAINST ANY RELEASED PARTY AND UNDERSTAND THIS RELEASES ALL CLAIMS, INCLUDING THOSE OF WHICH I AM NOT AWARE, THOSE NOT MENTIONED IN THIS RELEASE AND THOSE RESULTING FROM ANYTHING WHICH HAS HAPPENED UP TO NOW.

¶ 14    The 2022 online waiver defined "Released Party" to include "Vail Resorts, Inc., The Vail Corporation, . . . each of their affiliated companies and subsidiaries, the resort owner/operator, [and] all their res[pective] . . . affiliates, agents, employees, representatives, assignees, officers, directors, and shareholders" and released those parties from all liability for "any injury" arising "in whole or in part" from Litterer's participation in snowboarding, among other activities.

¶ 15    In its order granting summary judgment in favor of the Defendants, the court found that Litterer surrendered his right to sue the Defendants and released all claims against them when he

7

purchased an Epic Pass for the 2022-23 ski season and agreed to the 2022 online waiver.

### B. Standard of Review and Preservation

¶ 16 We review de novo a district court's ruling on a motion for summary judgment. *Gibbons v. Ludlow*, 2013 CO 49, ¶ 11; *see* C.R.C.P. 56(c). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c). The moving party bears the burden of establishing the lack of a triable factual issue. *Gibbons*, ¶ 11. We further review a district court's interpretation of a contract de novo. *French v. Centura Health Corp.*, 2022 CO 20, ¶ 14.

¶ 17 VSRI asserts that Litterer did not preserve his arguments that he did not agree to the 2022 online waiver or that the 2022 online waiver is unconscionable. We disagree.

¶ 18 In his response to the Defendants' motion for summary judgment, Litterer argued that the 2022 online waiver was not fairly entered into and that the intention to release the Defendants from liability was not expressed in clear and unambiguous language. And in ruling on the Defendants' motion for summary judgment,

8

the court had an opportunity to interpret the language of the 2022 online waiver. Therefore, we conclude that the issue was adequately preserved. *See In re Estate of Owens*, 2017 COA 53, ¶ 21 ("Where an issue was brought to the district court's attention and the court ruled on it, it is preserved for appellate review; no talismanic language is required to preserve an issue.").

## C. Applicable Law

¶ 19    Colorado recognizes a strong policy of freedom of contract. *Ravenstar, LLC v. One Ski Hill Place, LLC*, 2017 CO 83, ¶ 12. "Contracts between competent parties, voluntarily and fairly made, should be enforceable according to the terms to which they freely commit themselves." *Id.* (citation omitted). To be enforceable, a contract requires "mutual assent to an exchange between competent parties for legal consideration." *French*, ¶ 26.

¶ 20    In interpreting a contract, our primary goal is to give effect to the parties' intent. *Id.* at ¶ 25. The parties' intent is primarily determined from the language of the contract. *Id.* "When a written contract is complete and free from ambiguity, we will deem it to express the parties' intent and enforce it according to its terms." *Id.*

9

## D. Analysis

¶ 21    Litterer contends that he did not agree to the 2022 online waiver, that it is unconscionable and therefore enforceable, and that it cannot bar all his claims. We are not persuaded.

### 1. Litterer Agreed to the 2022 Online Waiver

¶ 22    Litterer contends that the 2022 online waiver is unenforceable because there was no "mutual assent" to its terms. Specifically, Litterer argues that the waiver lacked mutual assent because "he did not testify as to his intent or understanding of the potential ramifications of his purchase of the ski pass," including whether he read and understood its terms.

¶ 23    We first note that the 2022 online waiver operates as a release rather than an exculpatory agreement with respect to Litterer's claims against the Defendants arising from his 2020 collision with the snowmobile. An exculpatory agreement "attempts to insulate a party from liability from his own negligence" and therefore "must be closely scrutinized." *Jones v. Dressel*, 623 P.2d 370, 376 (Colo. 1981). "[I]n no event will [an exculpatory] agreement provide a shield against a claim for willful and wanton negligence." *Id.* However, "[a] release is the relinquishment of a vested right or claim

10

to a person against whom the claim is enforceable." *Neves v. Potter*, 769 P.2d 1047, 1049 (Colo. 1989). "Once a claim is released, the release bars the injured party from seeking further recovery." *CMCB Enters., Inc. v. Ferguson*, 114 P.3d 90, 96 (Colo. App. 2005). When questions about a release's scope or enforceability arise, Colorado courts answer them with "general contractual rules of interpretation and construction." *Bunnett v. Smallwood*, 793 P.2d 157, 159 (Colo. 1990).

¶ 24     When Litterer agreed to the 2022 online waiver, he had vested claims stemming from the injuries he sustained from the 2020 snowboarding collision. Accordingly, we apply the general principles of contract construction in considering the enforceability of the 2022 online waiver. While the 2020 online waiver and the 2020 physical waiver each sought to limit future negligence claims against VSRI and its employees, the 2022 online waiver required that Litterer release any and all claims against VSRI or its employees, including claims resulting from *past* events.

¶ 25     To form a valid contract, there must be an offer, an acceptance, and consideration that supports the agreement. *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008).

Colorado recognizes the existence of a contract implied by the conduct of the parties. *Id.* (noting acceptance of an offer may be established through a party's "words *or conduct* that, when objectively viewed, manifests an intent to accept an offer") (emphasis added); *see also I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882, 888 (Colo. 1986) (upholding a jury instruction that mutual assent "may be inferred from the conduct and declarations of the parties"). Litterer's purchase, acceptance, and use of the 2022-23 Epic Pass was sufficient conduct to demonstrate his assent to the terms of the 2022 online waiver such that a valid contract was formed. *See Marquardt,* 200 P.3d at 1129. Indeed, Litterer does not dispute that he purchased a 2022-23 Epic Pass in November 2022, completed the online waiver at that time, and then used that Epic Pass during a family ski trip.

¶ 26    Further — as Litterer concedes — his subjective and unexpressed intent or understanding of the 2022 online waiver is irrelevant to his assent to the agreement. Rather, "[t]he requisite meeting of the minds is established by the parties' acts, conduct, and words, along with the attendant circumstances, and not by any subjective, unexpressed intent by either party." *French,* ¶ 27.

12

Litterer electronically signed the 2022 online waiver, which advised him that the agreement was a condition of using the ski pass to snowboard at VSRI-owned resorts. As consideration for VSRI's promise to permit Litterer to access its resorts during the 2022-2023 ski season, Litterer unambiguously agreed to "waive any and all claims" against any party released by the agreement. *See Hudgeons v. Tenneco Oil Co.*, 796 P.2d 21, 23 (Colo. App. 1990) ("'All' is an unambiguous term and means the whole of, the whole number or sum of, or every member or individual component of, and is synonymous with 'every' and 'each.'"). The 2022 online waiver expressly and unambiguously listed VSRI and its employees as released parties pursuant to the terms of the agreement.

¶ 27    Finally, "Colorado law recognizes that 'one generally cannot avoid contractual obligations by claiming that he or she did not read the agreement.'" *Macasero v. ENT Credit Union*, 2023 COA 40, ¶ 18 (citation omitted). Absent an assertion of fraud, a party who signs a contract is presumed to know its contents and is bound by all the conditions within the contract, even if the party did not read the contract. *B & B Livery, Inc. v. Riehl*, 960 P.2d 134, 138 n.5 (Colo. 1998). As Litterer did not allege fraud and there is no

13

evidence of fraud in the record, he is bound by the entire content of the 2022 online waiver.

### 2. Alleged Unconscionability of the 2022 Online Waiver

¶ 28 Litterer also contends that the 2022 online waiver is unconscionable. *See, e.g.*, *Lincoln Gen. Ins. Co. v. Bailey*, 224 P.3d 336, 341 (Colo. App. 2009) (noting that a court may find a contract "unconscionable" when enforcement of its terms would result in a "profound sense of injustice") (citation omitted), *aff'd*, 255 P.3d 1039 (Colo. 2011). However, Litterer's argument is undeveloped because he doesn't explain how the 2022 online waiver is unconscionable beyond a conclusory allegation that he is penalized by its enforcement. Therefore, we decline to address this contention. *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007) (declining to address underdeveloped arguments).

### 3. The 2022 Online Waiver Is Enforceable

¶ 29 Under the 2022 online waiver's clear and unambiguous language, Litterer released "any and all claims" he had against the Defendants related to his 2020 injuries.

14

¶ 30　　"If a release agreement is valid, dismissal of claims encompassed by the agreement is proper." *Arline v. Am. Fam. Mut. Ins. Co.*, 2018 COA 82, ¶ 12; *see also* C.R.C.P. 8(c) (a release is an affirmative defense to a complaint). We therefore conclude that the court did not err by granting summary judgment to the Defendants on Litterer's claims for negligence, negligence per se, extreme and outrageous conduct, and premises liability.

### 4.　The 2020 Waivers

¶ 31　　Litterer also asserts that the 2020 online waiver and 2020 physical waiver are void because they are vague and ambiguous. Because we have determined that the court did not err by granting summary judgment on the basis that Litterer's claims are barred under the 2022 online waiver, we decline to address these arguments. *See Stor-N-Lock Partners # 15, LLC v. City of Thornton*, 2018 COA 65, ¶ 38 ("An issue is moot when the relief sought, if granted, would have no practical effect on an existing controversy.").

### III. The Court Did Not Err by Dismissing Litterer's Claim for Willful and Wanton Conduct

¶ 32 Litterer also asserts that the district court erred by dismissing his claim for willful and wanton conduct against the Defendants. We are not persuaded.

#### A. Additional Facts

¶ 33 After the court granted the Defendants' motion for summary judgment, Litterer moved for amendment of the judgment under C.R.C.P. 59(a)(4). Litterer sought to amend the judgment with respect to the court's dismissal of his claim for willful and wanton conduct, arguing that a jury "should determine whether [the] Defendants' conduct rose to the level of willful and wanton conduct, as the Court had already ruled [Litterer] had established a triable issue for the jury's determination." The court denied Litterer's motion, determining, as relevant here, that the court had dismissed that claim in November 2022, when it ruled on the Defendants' motion for partial dismissal of Litterer's claims.

#### B. Standard of Review

¶ 34 "We review a C.R.C.P. 12(b)(5) motion to dismiss de novo and apply the same standards as the trial court." *Norton v. Rocky*

16

*Mountain Planned Parenthood, Inc.*, 2018 CO 3, ¶ 7.  "We accept all factual allegations in the complaint as true, viewing them in the light most favorable to the plaintiff, but we are not required to accept bare legal conclusions as true."  *Id.*  "We will uphold the grant of a C.R.C.P. 12(b)(5) motion only when the plaintiff's factual allegations do not, as a matter of law, support the claim for relief."  *Id.*

## C.    Applicable Law

¶ 35    Willful and wanton conduct is "purposeful conduct committed recklessly that exhibits an intent consciously to disregard the safety of others."  *Forman v. Brown*, 944 P.2d 559, 564 (Colo. App. 1996).  Such conduct extends beyond mere unreasonableness.  *Id.*  Exculpatory agreements will not bar actions for willful and wanton negligence.  *Jones*, 623 P.2d at 376.

¶ 36    "[T]he issue of whether a defendant's conduct is purposeful or reckless is ordinarily a question of fact," but "if the record is devoid of sufficient evidence to raise a factual issue, then the question may be resolved by the court as a matter of law."  *Forman*, 944 P.2d at 564.

## D.   Analysis

¶ 37    Litterer asserts that an exculpatory contract could not waive his claim for willful and wanton conduct.  As already noted, the 2022 online waiver was a release, not an exculpatory agreement.  This argument is misplaced, however, because the court did not dismiss Litterer's claim on this basis.  Instead, the court determined that Colorado law does not recognize willful and wanton conduct as an independent cause of action.

¶ 38    The court alternatively determined that Litterer's claim for willful and wanton conduct duplicated his claim for negligence per se under the snowmobile safety statute, section 33-14-116(2), C.R.S. 2024, because both claims were premised on Litterer's argument that a violation of the statute, which prohibits operation of snowmobile in a manner that demonstrates a "wanton or willful disregard" for the safety of others, constitutes per se negligence.  Moreover, we (like the district court) concluded that the 2022 online waiver barred Litterer's claims against the Defendants.  Because we affirm on that basis, Litterer's arguments regarding his claim for willful and wanton conduct are moot, and we decline to address them further.  *See Stor-N-Lock Partners*, ¶ 38; *see also Rush Creek*

*Sols., Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 406 (Colo. App. 2004) (appellate courts may affirm on any basis supported by the record).

### IV. The Court Properly Dismissed Litterer's Claim for Exemplary Damages

¶ 39 Litterer next asserts that the court erred by dismissing his claim for exemplary damages. We disagree.

### A. Additional Facts

¶ 40 In granting the Defendants' motion for summary judgment, the court also dismissed Litterer's claim for exemplary damages, noting it could not stand without an underlying claim for actual damages. Litterer challenged this ruling in his C.R.C.P. 59 motion by seeking to amend the portion of the judgment dismissing his claim for exemplary damages. The court denied Litterer's motion, determining that "exemplary damages do not present a separate, distinct cause of action, but rather, depend on an underlying claim for actual damages."

### B. Standard of Review and Applicable Law

¶ 41 As mentioned, we review de novo a district court's ruling on a motion for summary judgment. *Gibbons*, ¶ 11.

¶ 42   Exemplary damages are only available by statute. *Qwest Servs. Corp. v. Blood*, 252 P.3d 1071, 1081 (Colo. 2011). An award of exemplary damages is permitted in civil actions in which an injury is attended by circumstances of "fraud, malice, or willful and wanton conduct." § 13-21-102(1)(a), C.R.S. 2024. "[W]illful and wanton conduct" means conduct "purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly," without regard to the safety of others, particularly the plaintiff. § 13-21-102(1)(b).

¶ 43   "A claim for exemplary damages . . . may not be included in any initial claim for relief" but "may be allowed by amendment to the pleadings only after the exchange of initial disclosures pursuant to [C.R.C.P. 26] and the plaintiff establishes prima facie proof of a triable issue." § 13-21-102(1.5)(a).

## C.   Analysis

¶ 44   Litterer first contends that we must reinstate his claim for exemplary damages if we determine that *Miller* does not bar his negligence per se claim because his claim for exemplary damages could attach to that claim.

¶ 45    Alternatively, Litterer contends that a claim for willful and wanton conduct is analogous to a claim for gross negligence. *See, e.g., Hamill v. Cheley Colo. Camps, Inc.*, 262 P.3d 945, 954 (Colo. App. 2011) (recognizing "gross negligence" as "willful and wanton conduct," otherwise described as "action committed recklessly, with conscious disregard for the safety of others"). He argues that a claim for exemplary damages is "synonymous with [a] willful and wanton gross negligence claim." Accordingly, he argues his claim for exemplary damages should be reinstated because the court provided him with "no opportunity whatsoever to assert a claim against [the] Defendants for willful and wanton conduct — either as a gross negligence claim in his [c]omplaint or as an exemplary damages claim."

¶ 46    We reject both arguments.

¶ 47    First, because we do not reach Litterer's argument that *Miller* permits his negligence per se claim to proceed, we decline to reinstate Litterer's claim for exemplary damages on that basis. Second, "[e]xemplary damages do not present a separate, distinct cause of action, but rather, depend on an underlying claim for actual damages." *Ferrer v. Okbamicael*, 2017 CO 14M, ¶ 44,

21

*superseded by statute on other grounds*, Ch. 147, sec. 1, § 13-21-111.5(1.5)(c), 2021 Colo. Sess. Laws 863; *see also Harding Glass Co. v. Jones*, 640 P.2d 1123, 1127 (Colo. 1982) ("[B]y its own terms section 13-21-102 has no application in the absence of a successful underlying claim for actual damages."). Litterer did not assert a claim for gross negligence in his original or amended complaint, and we will not rewrite his pleadings. *See People v. Cali*, 2020 CO 20, ¶ 24.

¶ 48    And, as already discussed, the court appropriately granted summary judgment on the remainder of his claims. Therefore, Litterer did not have an underlying claim for actual damages to which exemplary damages could be tied. Accordingly, the court did not err by determining that Litterer could not independently pursue a claim for exemplary damages.

## V.    Disposition

¶ 49    The judgment is affirmed.

JUDGE LIPINSKY and JUDGE JOHNSON concur.