25CA0679 Colorado School v Rocky Mountain

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0679
Arapahoe County District Court No. 23CV30301
Honorable Michelle Amico, Judge
Honorable Elizabeth Beebe Volz, Judge

Colorado School District Self Insurance Pool and Widefield School District
No. 3,

Plaintiffs-Appellees,

v.

Rocky Mountain Construction Company,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE YUN
Lipinsky and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 11, 2026

Hall & Evans, LLC, Ryan L. Winter, Matthew J. Ninneman, Ethan E. Zweig,
Denver, Colorado, for Plaintiffs-Appellees

Lorber, Greenfield & Olsen, LLP, Thomas F. Olsen, Konrad R. Schreier,
Greenwood Village, Colorado, for Defendant-Appellant

¶ 1    Defendant, Rocky Mountain Construction Company (RMCC), appeals the district court's denial of its motion for directed verdict and subsequent denial of its motion for post-trial relief after a jury returned a verdict in favor of plaintiffs, the Colorado School District Self Insurance Pool (SIP) and Widefield School District No. 3 (the school district), on their breach of contract claim.  We affirm the judgment.

## I.    Background

¶ 2    After two summer hailstorms damaged Mesa Ridge High School, the school district and SIP contacted RMCC to perform mitigation and repair work.  With the SIP's approval, RMCC began mitigation efforts at the school in September 2018.  RMCC then submitted three estimates, covering three phases of work at the school, totaling $3,929,710.12, to be paid through a series of progress payments.

¶ 3    Each estimate specified work to be performed in more than 150 areas of the school, including classrooms, offices, hallways, and common spaces.  Extensive repairs were required in any room or hallway with a drop ceiling.  The school district agreed to work with RMCC, and the SIP issued progress payments as RMCC

completed certain percentages of the work set forth in the estimates.

¶ 4     During the second phase of work, the SIP's claims adjuster requested that RMCC's chief executive officer (the CEO) provide documentation substantiating RMCC's incurred costs because this phase involved the acquisition and installation of materials. By that point, the school district and SIP had already paid RMCC $3,278,643.12, but the claims adjuster needed to verify costs before issuing further payments. The CEO initially agreed to supply the documentation but later insisted that the original estimates were sufficient. Because RMCC did not provide the documentation, the SIP paused all payments to RMCC in January 2020.

¶ 5     The school district and SIP retained an independent building consultant to audit the costs before resuming payments. In an April 2020 report, the consultant found that RMCC had billed $846,318.88 for work it had never performed. Most of this overbilling resulted from RMCC overcounting rooms with drop ceilings — listing many rooms with drywall ceilings, where no work was needed, as rooms with drop ceilings, where substantial work

2

was required.  The school district and SIP notified RMCC of this overbilling, but RMCC again declined to verify its costs.

¶ 6    In February 2023, the school district and SIP filed a complaint alleging, among other claims, breach of contract.  RMCC moved for summary judgment, arguing that the statute of limitations barred the breach of contract claim.  RMCC contended that such a claim is subject to a three-year statute of limitations that begins when the breach should have been discovered by the exercise of reasonable diligence.  *See* §§ 13-80-101(1)(a), -108(6), C.R.S. 2025.  RMCC asserted that the February 2023 complaint was "not timely" because the school district and SIP should have discovered the breach before they received the consultant's April 2020 report.  Since all three estimates were available by December 2019 and drop ceilings are easily identifiable, RMCC argued that the statute of limitations began running when "the estimates were provided to [the school district and SIP]."

¶ 7    The district court denied RMCC's motion for summary judgment, finding "that determining when [the school district and SIP] knew, or should have known, of any alleged breach is a

disputed question of fact precluding summary judgment on this issue."

¶ 8 During trial, after the school district and SIP presented their case-in-chief, RMCC moved for a directed verdict on the breach of contract claim under C.R.C.P. 50. RMCC reiterated its statute of limitations argument, asserting that the school district and SIP — specifically, the school district's operations manager and the SIP's claims adjuster — should have discovered the breach by comparing the estimates to the work performed onsite. Additionally, RMCC argued that the SIP "[does not] have any witness who will testify . . . that they have a contract with [RMCC]."

¶ 9 The district court denied RMCC's motion for directed verdict, rejecting its arguments regarding the statute of limitations and the existence of a contract. As for the existence of the contract, the court observed the following:

> The very first question the jury asked in the beginning of this case was: Was this a fixed price contract or was it a time and material[?] And no witness so far has been able to answer that question. I don't know what contract you had. But I also find that it's so up in the air there could be unjust enrichment. There could be waiver.

4

> . . . I do think it is for the jury to decide when whoever was paying — I mean, obviously, [the SIP] was paying for the claim. The [school district] was getting the services. It's difficult for me to understand why, if you're going to pay over a million dollars you don't have any idea of whether or not the work you paid for was the work you wanted. . . . I'm looking at both sides here.

The court decided to "leave [these issues] up to the jury" because "there's so much information here and so many ways that a claim could potentially be made."

¶ 10    After a five-day trial, the jury returned a verdict for the school district and SIP. Specifically, the jury answered the following questions in the special verdict form:

> QUESTION NO. 1: Do you find that a contract was formed between plaintiffs [the SIP] or [the school district] and defendant [RMCC]? (yes or no)
>
> ANSWER NO. 1: Yes
>
> . . . .
>
> QUESTION No. 4: Did [RMCC] breach the contract? (yes or no)
>
> ANSWER NO. 4: Yes
>
> . . . .

QUESTION NO. 6: If you determined that [RMCC] breached the contract, did [RMCC] prove by a preponderance of the evidence its affirmative defense based on the statute of limitations? (yes or no)

ANSWER NO. 6: No.

In accordance with the jury verdict, the court awarded the school district and SIP $846,318.88 in damages.

¶ 11 RMCC then moved for post-trial relief under C.R.C.P. 59, requesting either "an amended verdict on the statute of limitations because the jury's [verdict] is irreconcilable with . . . the law, testimony, and the evidence admitted at trial" or a "new trial on the [s]tatute of [l]imitations issues." The district court observed that RMCC's motion was, in essence, a request for judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial. The court denied both requests, reiterating that the statute of limitations was a factual question properly resolved by the jury.

¶ 12 RMCC now appeals.

## II. Analysis

¶ 13 RMCC contends that the district court erred by denying its directed verdict motion because the SIP and school district failed to prove the existence of a contract during their case-in-chief. RMCC

also maintains that the court erred by denying its motions for directed verdict and JNOV on the grounds that the statute of limitations barred the lawsuit as a matter of law.[1] We begin by providing the applicable standard of review and relevant law, then address each contention in turn.

### A. Standard of Review and Applicable Law

¶ 14 We review de novo a district court's rulings on motions for directed verdict and JNOV, employing the same standards used by the district court. *M.G. Dyess, Inc. v. MarkWest Liberty Midstream & Res., L.L.C.*, 2022 COA 108, ¶ 27. When considering either motion, the court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmovant. *Id.*; *see also Salstrom v. Starke*, 670 P.2d 809, 811 (Colo. App. 1983) ("A motion for directed verdict in a jury trial admits the truth of the

---

[1] On appeal, RMCC summarily asserts that the district court erred by not dismissing the case based on the statute of limitations issue raised in its post-trial motion. The record shows that this motion requested a JNOV or, in the alternative, a new trial. But because RMCC does not specifically appeal the denial of a new trial or develop this argument, we do not address further the district court's denial of RMCC's request for a new trial. *See In re Estate of Chavez*, 2022 COA 89M, ¶ 26 ("We don't consider undeveloped and unsupported arguments." (quoting *Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12)).

[nonmovant's] evidence and of every favorable inference of fact which may legitimately be drawn from it."). "If the facts are sufficiently in dispute such that reasonable people could reach different conclusions, it is the function of the jury to resolve those disputes." *M.G. Dyess*, ¶ 27. Applying these standards, a court should not grant a motion for directed verdict or JNOV "unless there is no evidence that could support a verdict against the [movant] on the claim" from the standpoint of a reasonable juror. *Smith v. Surgery Ctr. at Lone Tree, LLC*, 2020 COA 145M, ¶ 8 (citation omitted).

¶ 15 To prevail on a breach of contract claim, the plaintiffs must prove the following by a preponderance of the evidence: (1) the existence of a contract; (2) the plaintiffs' performance of the contract or justification for nonperformance; (3) the defendant's failure to perform the contract; and (4) the plaintiffs' damages as a result of the defendant's failure. *Univ. of Denv. v. Doe*, 2024 CO 27, ¶ 46.

¶ 16 As relevant here, a contract exists "when an offer is made and accepted and the agreement is supported by consideration." *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008) (citation omitted). Whether the parties entered into a contract is a question

8

for the jury.  *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 887 (Colo. 1986).  Specifically, when the existence of a contract is at issue and the evidence is conflicting or subject to more than one inference, it is for the jury to determine whether a contract exists.  *Id.* at 888 (explaining that "there was evidence from which the jury could have concluded that a binding contract was entered before the parties learned of the discrepancy between the estimated and actual liabilities").  We are bound by the jury's determination if competent evidence in the record supports it.  *Id.*

¶ 17 Even if the plaintiffs establish a prima facie case for breach of contract, the defendant may raise the statute of limitations as an affirmative defense.  C.R.C.P. 8(c); *see Crosby v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1279, 1283 (Colo. App. 2010).  To succeed on this affirmative defense, the defendant must establish (1) the statute of limitations applicable to the plaintiffs' claim; (2) the accrual of the claim; and (3) the expiration of the limitations period before the plaintiffs filed suit.  *Crosby*, 251 P.3d at 1283.

¶ 18 The statute of limitations for breach of contract is three years.  § 13-80-101(1)(a).  A cause of action for breach of contract accrues "on the date the breach is discovered or should have been

discovered by the exercise of reasonable diligence." § 13-80-108(6). "Ordinarily, the accrual date of a claim and the corresponding issue of whether the statute of limitations has expired are questions of fact for a jury to resolve." *City & County of Denver v. Bd. of Cnty. Comm'rs*, 2024 CO 5, ¶ 26. However, if "the material facts are undisputed and reasonable persons could not disagree about their import, these questions may be decided as a matter of law." *Sterenbuch v. Goss*, 266 P.3d 428, 432 (Colo. App. 2011). Only in the clearest cases should the question of accrual date be taken from the jury. *See Mastro v. Brodie*, 682 P.2d 1162, 1169 (Colo. 1984); *Salazar v. Am. Sterilizer Co.*, 5 P.3d 357, 363 (Colo. App. 2000).

## B. Existence of Contract

¶ 19 RMCC first contends that the district court should have granted its motion for directed verdict because the school district and SIP "failed to establish [the existence of a contract] during their case in chief," supposedly based on the district court's comment that it "had no idea what the contract was." But this mischaracterizes the court's comment and misapprehends the standard of review on appeal.

¶ 20    While the district court noted that the *type* of contract was unclear and that unjust enrichment could be viable if no contract existed, this passing observation was not a finding that there was "no evidence" to support the existence of a contract.  *Smith*, ¶ 8 (citation omitted).  To the contrary, the school district and SIP presented substantial evidence during their case-in-chief supporting the existence of a contract, including:

- *Evidence of an offer*: The school district and SIP contacted only RMCC — not other construction companies — to perform this work, based on their prior relationship working together.  The SIP advised the school district to "engage in whatever contract [RMCC] wanted to with the District." Both the operations manager and claims adjuster repeatedly testified to authorizing, agreeing to, and approving RMCC's continued work.

- *Evidence of acceptance*: At the school district's request, RMCC inspected the damage and immediately began work. RMCC submitted three estimates itemizing the work to be performed and the corresponding charges to the school district and SIP.  RMCC also obtained the operations

manager's signature on a document accompanying the phase two estimate, which purported to "memorialize our project scope." The claims adjuster received this document as well.

- *Evidence of consideration*: The SIP issued progress payments to RMCC as work was completed under each phase. Once the school district confirmed that RMCC had completed a certain percentage of work on the estimate, the SIP issued payments to RMCC. RMCC ultimately received a total of $3,278,643.12 for its work at the school.

¶ 21 Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the school district and SIP, a reasonable jury could conclude that a contract existed. *See M.G. Dyess*, ¶ 27; *see also Gilley v. Oviatt*, 2025 COA 27, ¶ 12 (holding a directed verdict is appropriate only when "there is no evidence to support an element of a claim"). While RMCC argues that the contract's existence was unclear and that the witnesses' testimony was at times contradictory, when "the evidence is conflicting or admits of more than one inference, it is for the jury to decide whether a contract in fact exists." *I.M.A., Inc.*, 713 P.2d at 887.

Accordingly, by denying RMCC's motion for directed verdict, the district court properly left this issue for the jury to resolve.

## C.     Statute of Limitations

¶ 22     RMCC next contends that the district court erred by denying its motions for directed verdict and JNOV because the school district and SIP filed their February 2023 complaint after the statute of limitations had expired.  RMCC argues that the school district and SIP should have exercised reasonable diligence to discover RMCC's alleged breach before the April 2020 report.  Specifically, RMCC claims that the SIP's cessation of payments in January 2020 marked the start of the limitations period.  RMCC points to the following evidence in support:

- The construction work took place from September 2018 through the end of 2019.

- The operations manager and claims adjuster each received all three estimates detailing the work for each area.  Both had access to the site while work was underway, and the operations manager visited the site multiple times.

- Both the operations manager and claims adjuster could tell the difference between drop ceilings and drywall ceilings.

13

¶ 23    But contrary to RMCC's contentions, other evidence in the record supports the jury's finding that the school district and SIP neither knew nor, through reasonable diligence, should have known about RMCC's breach before the consultant's April 2020 report. The jury heard the following evidence:

- During construction, both the claims adjuster and operations manager had limited capacity to oversee RMCC's work. Hailstorms had damaged at least twenty buildings in the district, including five other schools, all of which were under the operations manager's responsibility and insured by the SIP.

- For Mesa Ridge High School alone, RMCC's estimates for the three phases of work totaled 498 pages and identified 4,295 line items.

- The CEO testified that he was too busy to review the estimates for accuracy and stated it was not the

14

responsibility of the school district or SIP to ensure his company was "being honest."[2]

- Both the operations manager and claims adjuster trusted RMCC to bill accurately for the work, as they had previously worked with RMCC without issue.

- Both testified that auditing the scope of RMCC's contracted work was not part of their job responsibilities.

- When the SIP requested documentation of costs for materials, RMCC refused, prompting the SIP to hire the independent consultant.

- Both the operations manager and claims adjuster testified that they first learned RMCC might have overbilled when the consultant issued the April 2020 report. Believing that the overbilling was likely a "simple mistake," the claims adjuster contacted the CEO to share the consultant's

---

[2] The fact that the CEO testified during RMCC's case, rather than during the school district and SIP's case-in-chief, does not alter our conclusion regarding RMCC's motion for directed verdict. The other evidence introduced in the school district and SIP's case-in-chief independently established a genuine factual dispute as to when they knew or should have known about the excessive billing.

findings, request supporting documentation, and collaborate on further investigation.

- The CEO hired his own consultant to review the April 2020 report and conduct an independent audit. This consultant, like the claims adjuster, requested documentation of costs of materials. The CEO never provided the requested documentation and eventually ceased communication with the consultant.

- In early 2023, the CEO was continuing to dispute the April 2020 report's findings, maintaining that no overbilling had occurred. RMCC retained a second consultant to review the April 2020 report and conduct its own audit.[3]

¶ 24    Again, considering the evidence and all reasonable inferences therefrom in the light most favorable to the school district and SIP, a reasonable jury could infer: (1) RMCC was responsible for providing accurate project estimates; (2) the school district and SIP were not responsible for identifying discrepancies between the

---

[3] This consultant concluded that RMCC overbilled, but by a significantly smaller margin than the amount the school district and SIP claimed.

estimates and the onsite work; (3) the school district and SIP exercised reasonable diligence by retaining an independent consultant to audit the project; and (4) the question of overbilling was a matter of ongoing dispute between the parties. Under these circumstances, a reasonable jury could conclude that the school district and SIP neither knew nor should have known about RMCC's breach until April 2020.

¶ 25    Our conclusion is not altered by RMCC's attempt to reframe the accrual date and expiration of the statute of limitations as purely legal questions. The accrual date may be resolved as a matter of law only when the material facts are undisputed and reasonable minds could not disagree about their significance. *Sterenbuch*, 266 P.3d at 432. Here, by contrast, the evidence — viewed in the light most favorable to the school district and SIP — was disputed and supported more than one reasonable inference regarding the accrual date. *See I.M.A., Inc.*, 713 P.2d at 887. The district court therefore properly denied RMCC's motions for directed verdict and JNOV and allowed the jury to determine the accrual date.

### III.    Disposition

¶ 26    The judgment is affirmed.

JUDGE LIPINSKY and JUDGE SCHUTZ concur.