23CA1500 Layton v Toole 11-13-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1500
Boulder County District Court No. 23CV14
Honorable J. Keith Collins, Judge

---

Angelique Layton,

Plaintiff-Appellant,

v.

Sara Toole, Russell Landau, Barry Lewis, Main 434 LLC, and RBL Financial
LLC,

Defendants-Appellees.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE MOULTRIE
Welling and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 13, 2025

---

Angelique Layton, Pro Se

Sara Toole, Pro Se

Hatch Ray Olsen Conant LLC, Christopher J. Conant, Denver, Colorado, for
Defendants-Appellees Russell Landau, Barry Lewis, Main 434 LLC, and RBL
Financial LLC

¶ 1      Plaintiff, Angelique Layton, appeals the district court's judgment dismissing her complaint against defendants, Sara Toole, Russell Landau, Barry Lewis, Main 434 LLC (Main 434), and RBL Financial LLC (RBL). We affirm the judgment in part, reverse the judgment in part, and remand the case to the district court for further proceedings consistent with this opinion.

## I.    Background

¶ 2      This appeal is the latest chapter in the lengthy history of highly contentious legal proceedings involving these same parties and their dispute about ownership interests in a commercial property located in Lyons (the property). The complex background of numerous legal actions that preceded this appeal is set forth in detail in *RBL Financial LLC v. Main 434 LLC*, (Colo. App. No. 23CA1501, Aug. 22, 2024) (not published pursuant to C.A.R. 35(e)). Layton represented Toole in several of the legal actions involving the property until Layton was suspended from the practice of law.[1]

---

[1] Layton was suspended from the practice of law in 2021 and subsequently disbarred in 2023 for, among other things, her actions while representing Toole in the various legal proceedings concerning the property. *People v. Layton*, (Colo. O.P.D.J. No. 22PDJ032, Apr. 19, 2023).

¶ 3 As relevant to this appeal, the parties were involved in a foreclosure case related to the property in which a partition proceeding was held. *See id.* at ¶¶ 11-15.

### A. The Partition Proceeding

¶ 4 Layton filed a motion to intervene in the foreclosure case, asserting that she had an ownership interest in the property. The court in that case (the partition court) denied Layton's motion to intervene, reasoning, in part, that Toole was able to adequately represent Layton's interests in the case, "whatever interest that may be."

¶ 5 The partition court appointed a commissioner to "investigate the facts and circumstances surrounding the ownership interests of the [p]roperty" and make recommendations regarding the disposition of the property.

¶ 6 The commissioner held an evidentiary hearing and made the following relevant factual findings and conclusions of law:

- The property had only two record owners — Main 434 and Toole, who were each fifty percent owners of the property.

- The property was encumbered by debts secured by two deeds of trust, both owned by RBL.

- Toole filed bankruptcy after defaulting on her obligations under the first deed of trust, which resulted in Toole's fifty percent interest becoming the property of the bankruptcy estate. Toole also later defaulted on obligations under the second deed of trust.

- Layton supplied Toole with the funds necessary to enable Toole to repurchase her fifty percent ownership interest from the bankruptcy estate.

- Layton made several payments to RBL to "cure" Toole's defaults under both deeds of trust, thereby fully satisfying Toole's outstanding debt obligations.

¶ 7    The commissioner — after considering Layton's payments to RBL and Toole — found that "no evidence was ever presented by any party that Angelique Layton has any form of interest in the [p]roperty."

¶ 8    The commissioner also found that, despite Layton's repeated requests that Toole convey her half ownership interest in the property to Layton, Toole "never agreed to []or complied with

3

[Layton's] requests. Further, no evidence was ever presented that [Toole] incurred a debt obligation to [Layton] in connection with [Layton's] expenditures of funds to satisfy [the debts owed under RBL's two deeds of trust]." The commissioner found that Layton's payments were instead "capital contributions" to a limited liability company (SA Lyons) that Toole and Layton created for the purpose of operating a restaurant at the property and concluded that Layton's contributions resulted in Layton gaining only an equity interest in SA Lyons, not a "legal or ownership interest in the [p]roperty."

¶ 9 The commissioner thus recommended that the property be partitioned by sale. The partition court adopted the commissioner's findings of fact and conclusions of law as an order of the court (the partition order).

### B. Layton's Civil Complaint

¶ 10 Layton then initiated the civil suit underlying this appeal, asserting eleven[2] claims based on allegations of unjust enrichment, fraud, contractual interference, promissory estoppel, and unfair or

---

[2] Layton's complaint contains eleven total claims, the last two of which are identified as claim "ten."

deceptive trade practices. Layton referenced the partition proceeding and the partition order in the factual allegations of her complaint.

¶ 11　　Main 434 filed a motion to dismiss Layton's complaint under C.R.C.P. 12(b)(5) (the motion to dismiss); defendants RBL, Landau, and Lewis joined in the motion to dismiss. We refer to defendants Main 434, RBL, Landau, and Lewis collectively as "the Main 434 defendants." The Main 434 defendants summarized the factual findings from the partition order in the body of their motion to dismiss. They also attached various documents from the partition proceeding to the motion to dismiss, including Layton's motion to intervene and the partition order, and asked the court to dismiss Layton's complaint based on issue preclusion[3] or laches. The Main 434 defendants argued that the court could consider the exhibits attached to the motion to dismiss without converting it to a motion

---

[3] The parties alternatively refer to "issue preclusion" and "collateral estoppel" in the record and in their briefs. We utilize the preferred term of issue preclusion. *See Argus Real Est., Inc. v. E-470 Pub. Highway Auth.,* 109 P.3d 604, 608 (Colo. 2005) (noting that the term "issue preclusion" is preferred rather than "collateral estoppel").

for summary judgment because Layton had referenced the partition proceeding in her complaint.

¶ 12     Layton filed a response objecting to the motion to dismiss, arguing that the Main 434 defendants couldn't meet their burden to show dismissal was appropriate under Rule 12(b)(5); issue preclusion and laches were inapplicable; and the partition court lacked jurisdiction to enter the partition order because she was an indispensable party who was denied the right to intervene, thus rendering the partition order void or voidable.  The Main 434 defendants filed a reply, to which they attached Layton's order of disbarment, which had been entered while the motion to dismiss was pending.

¶ 13     Toole, who was unrepresented, didn't ask to join the motion to dismiss.

¶ 14     The court granted the Main 434 defendants' motion to dismiss in an order (dismissal order) that said,

> The Court has reviewed Defendant Main 434 LLC's Motion to Dismiss, Plaintiff's response, and Defendant's reply.  The Court notes all

other named defendants[4] have joined in Main 434 LLC's Motion to Dismiss. After reviewing the pleadings, the Court adopts Defendant[s'] argument and legal support contained in their Motion and Reply. The Court concurs with Defendants that this lawsuit is nothing more than another attempt by Ms. Layton to relitigate an issue that has been fully litigated and a final judgment on the merits has entered.

. . . .

Defendant[s'] Motion to Dismiss is GRANTED.

¶ 15 This appeal followed.

## II. Discussion

¶ 16 We construe Layton's opening brief to assert that the court erred by dismissing her complaint because (1) the partition order is void or voidable; (2) the court misapplied the law by considering the Main 434 defendants' affirmative defenses and extrinsic evidence to

---

[4] In the underlying case, the parties and the court often blur the lines concerning which specific defendants are being referenced in pleadings, motions, and orders.

resolve the motion to dismiss; and (3) her claims aren't barred by issue preclusion or laches.[5]

¶ 17    In support of her contentions, Layton argues that the court failed to "make a proper appellate record" because it didn't make specific findings in the dismissal order explaining its reasoning for dismissing the complaint.  She requests that we remand this matter to the court "for an appropriate record and findings."

¶ 18    The Main 434 defendants argue that the court appropriately applied the law in granting the motion to dismiss and that issue preclusion and laches required the court to dismiss Layton's complaint with prejudice.  They alternatively argue that, to the extent the court treated the motion to dismiss as a C.R.C.P. 56 motion for summary judgment, Layton was "on notice" and "assented to such conversion by relying on her own extrinsic evidence."  Toole, who remains unrepresented, states in her answer

---

[5] The Main 434 defendants dispute whether Layton has adequately preserved the issues she raises on appeal as they are phrased in her opening brief.  We conclude that Layton's arguments, as we understand them, are adequately preserved for our review because Layton presented the "sum and substance" of them to the district court in her response to the motion to dismiss.  *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50 (citation omitted).

brief that she "concurs with the arguments submitted by [the Main 434 defendants' attorney]" and argues that Layton's claims that Toole "promised a personal deed in exchange for [Layton's] financial contributions are . . . unevidenced, and untrue." The Main 434 defendants and Toole ask us to affirm the judgment.

¶ 19 We first consider Layton's assertion that the partition order is void or voidable and conclude that we are without authority to address the merits of this assertion.

¶ 20 We then discuss the legal principles applicable to Rule 12(b)(5) motions to dismiss. Applying those principles to the facts of this case, we reject Layton's assertion that the court erred by considering extrinsic documents and affirmative defenses in ruling on the motion to dismiss.

¶ 21 We next consider whether the court erred by dismissing Layton's claims. We conclude that the court didn't err by dismissing Layton's tenth claim (the promissory estoppel claim). Layton's promissory estoppel claim is issue precluded as to her allegations against Toole and otherwise fails to state a plausible claim based on a promise purportedly made by Landau. We likewise conclude that the court didn't err by dismissing Layton's

third claim (the fraud claim) and her eighth claim (the contractual interference claim) because the factual allegations supporting those claims are insufficient to demonstrate that those claims are plausible.

¶ 22 However, we conclude that the court erred by dismissing Layton's remaining claims based on issue preclusion and laches, and that the court's error wasn't harmless.

¶ 23 Accordingly, for the reasons discussed below, we affirm in part and reverse in part the court's judgment.

A. The Validity of the Partition Order Isn't Properly Before Us

¶ 24 Layton contends that the partition court lacked "jurisdiction" to enter the partition order because she was an indispensable party and her request to intervene was denied. She asserts that this renders the partition order void or voidable. This contention isn't properly before us.

¶ 25 The partition order wasn't decided in the case underlying this appeal; instead, it was decided in the partition proceeding. And Layton filed an appeal of the partition proceeding in which she similarly argued that the partition order was void or voidable because the partition court lacked personal jurisdiction over her.

*See RBL Fin. LLC*, No. 23CA1501, slip op. at ¶ 34.  A division of this court addressed — and rejected — her contentions.  *Id.*  And Layton hasn't identified a basis upon which we may address orders arising out of a case other than the one directly before us.  *Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010) (appellants must inform the court of the authorities supporting their contentions).  Accordingly, we decline to further address this issue.

## B. The Court Didn't Err by Considering Extrinsic Documents and Affirmative Defenses in Resolving the Motion to Dismiss

### 1. General Legal Principles Underlying Rule 12(b)(5) Motions

¶ 26    "A motion to dismiss under C.R.C.P. 12(b)(5) alleges that dismissal is appropriate because, even if the facts alleged in the complaint are true, the complaint fails to state a claim upon which relief can be granted."  *Prospect Dev. Co. v. Holland & Knight, LLP*, 2018 COA 107, ¶ 11.

¶ 27    A plaintiff must allege a plausible claim for relief to survive a Rule 12(b)(5) motion to dismiss.  *Scott v. Scott*, 2018 COA 25, ¶ 19; *see also Warne v. Hall*, 2016 CO 50, ¶ 24 (adopting plausibility standard in Colorado).  A claim is plausible when its factual allegations raise a right to relief above the speculative level.  *See*

*Adams Cnty. Hous. Auth. v. Panzlau*, 2022 COA 148, ¶ 50. Thus, a plausible claim for relief must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Id.* (citation omitted).

¶ 28 Whether a complaint states a plausible claim for relief is context dependent and "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### 2. Extrinsic Documents and Affirmative Defenses

¶ 29 In reviewing a Rule 12(b)(5) motion to dismiss, a court can properly consider documents a plaintiff refers to and relies on — but doesn't attach to — their complaint. *Yadon v. Lowry*, 126 P.3d 332, 336 (Colo. App. 2005). Because such documents aren't considered to be "outside" the complaint, a court can consider them without converting the motion to dismiss to a motion for summary judgment. *Id.* An affirmative defense to a complaint generally must be raised in an answer; however, it may be raised in a Rule 12(b)(5) motion to dismiss if the bare allegations of the complaint — and any documents referenced therein — demonstrate that the affirmative defense applies. *Prospect Dev. Co.*, ¶¶ 11, 14; *see also Bristol Bay*

*Prods., LLC v. Lampack*, 2013 CO 60, ¶ 44 (noting that a "litigant may plead [herself] out of court by alleging (and thus admitting)" facts establishing an affirmative defense (quoting *U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003))).

### 3. Standard of Review

¶ 30 We review de novo a court's ruling on a C.R.C.P. 12(b)(5) motion to dismiss. *Norton v. Rocky Mountain Planned Parenthood, Inc.*, 2018 CO 3, ¶ 7. In doing so, we apply the same standards as the district court, meaning that we "accept all factual allegations in the complaint as true, viewing them in the light most favorable to the plaintiff." *Id.* We aren't, however, required to accept bare legal conclusions as true. *Id.* If the factual allegations in the complaint cannot, as a matter of law, support the claim for relief, then we will uphold the district court's grant of the Rule 12(b)(5) motion. *Id.*; *Bewley v. Semler*, 2018 CO 79, ¶ 14; *see also Carbajal v. Wells Fargo Bank, N.A.*, 2020 COA 49, ¶ 13 (noting that an appellate court may affirm a motion to dismiss on any ground supported by the record).

### 4. Analysis

¶ 31 Layton asserts that if a court relies on extrinsic evidence in resolving a Rule 12(b)(5) motion to dismiss, it must convert the motion to a motion for summary judgment and only consider extrinsic evidence that is supported by affidavits based on personal knowledge. She argues that the court thus erred by considering extrinsic evidence from the partition proceeding in ruling on the motion to dismiss without applying the summary judgment standard. We disagree.

¶ 32 Layton's complaint specifically references various documents in the partition proceeding, including her motion to intervene and the partition order. The Main 434 defendants attached both of those documents to the motion to dismiss. And because Layton referred to and relied on those partition proceeding documents in her complaint, the court could rely on them without converting the

motion to dismiss to a motion for summary judgment, as can we.[6] *See Yadon*, 126 P.3d at 336.

¶ 33    We also disagree with Layton's assertion that the court erred by considering the Main 434 defendants' affirmative defenses of issue preclusion and laches. *See* C.R.C.P. 8(c) (identifying laches and "res judicata" as affirmative defenses); *Argus Real Est., Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005) (noting that "res judicata" is an overarching term that encompasses both claim preclusion and issue preclusion).

¶ 34    The parties have been involved in multiple court proceedings related to the property — the history of which Layton recounts at length in her complaint — and the purpose of the partition

---

[6] However, to the extent that the Main 434 defendants assert that we can and should take judicial notice of the entirety of the partition action and any documents contained therein, we disagree, and we decline to do so. *See Bristol Bay Prods., LLC v. Lampack*, 2013 CO 60, ¶ 46 (noting that a court's power to judicially notice court records from another proceeding "is not unlimited"); *see also Prospect Dev. Co. v. Holland & Knight, LLP*, 2018 COA 107, ¶ 15 (noting that unfettered use of judicial notice without converting a motion to dismiss to a motion for summary judgment would result in the exception swallowing the rule). We likewise don't consider the disbarment order that the Main 434 defendants attached to their reply because that document wasn't referenced in Layton's complaint (nor could it have been since it was issued after Layton filed her complaint).

proceeding was to determine the parties' interests in the property. And Layton alleges in her complaint that she has an ownership or other interest in the property that entitles her to relief. Thus, it's clear from the face of Layton's complaint that issue preclusion, laches, or both could apply to Layton's claims.

C.     Whether the Court Erred by Dismissing Layton's Claims

¶ 35     We next turn to our review of the claims in Layton's complaint. We affirm the court's dismissal of Layton's promissory estoppel claim as to Toole because it's issue precluded. We also affirm the court's dismissal of Layton's promissory estoppel claim against Landau, and her fraud and contractual interference claims against RBL and Main 434, albeit on different grounds. However, we conclude that the court's dismissal of Layton's remaining claims — whether based on issue preclusion or laches — was erroneous.

1.     Layton's Promissory Estoppel Claim Against Toole is Barred by Issue Preclusion

¶ 36     Issue preclusion bars relitigation of a legal or factual matter already decided in a prior proceeding. *In re Tonko*, 154 P.3d 397, 405 (Colo. 2007). Issue preclusion applies when (1) the issue sought to be precluded is identical to an issue that was actually

16

and necessarily determined in the prior proceeding; (2) the party against whom preclusion is asserted was a party to, or is in privity with a party to, the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom preclusion is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Id.*

¶ 37 Thus, when determination of a particular issue was necessary to the outcome of a prior action, issue preclusion applies to prevent parties from relitigating that issue in a later proceeding, even if the specific claims for relief are different. *See Foster v. Plock*, 2017 CO 39, ¶ 13. "The burden of establishing these elements rests with the party seeking to invoke the doctrine." *Goldsworthy v. Am. Fam. Mut. Ins. Co.*, 209 P.3d 1108, 1114 (Colo. App. 2008).

¶ 38 Layton argues that the court erred by dismissing her promissory estoppel claim against Toole based on issue preclusion. We disagree.

¶ 39 As an initial matter, we acknowledge that Toole didn't join in the Main 434 defendants' motion to dismiss, despite the court finding otherwise in its dismissal order. Thus, by adopting the argument that Layton's claims were barred by issue preclusion, the

17

court essentially dismissed Layton's promissory estoppel claim against Toole sua sponte.

¶ 40    A court may dismiss a complaint sua sponte if it appears, as a matter of law, that the plaintiff failed to state a claim that could survive a motion to dismiss. *Schwartz v. Owens*, 134 P.3d 455, 457 (Colo. App. 2005). As we discuss next, because issue preclusion barred Layton's sole claim against Toole, the court didn't err by sua sponte dismissing that claim.

### a.    Promissory Estoppel Legal Principles

¶ 41    A plaintiff asserting a claim for promissory estoppel must establish four elements: (1) a promise exists; (2) the promisor reasonably should have expected that the promise would induce action or forbearance by the promisee or a third party; (3) the promisee or third party reasonably and detrimentally relied on the promise; and (4) the promise must be enforced in order to prevent injustice. *Pinnacol Assurance v. Hoff*, 2016 CO 53, ¶ 32. As relevant here, when there is no promise, "there cannot be a valid promissory estoppel claim." *Marquardt v. Perry*, 200 P.3d 1126, 1131 (Colo. App. 2008).

¶ 42    Layton's promissory estoppel claim is premised on her assertion that Toole promised to execute deed documents securing Layton's "contribution to the ownership interest of the property" in exchange for the payments Layton made to "cure" the outstanding debts that Toole owed to RBL.  Layton says Toole never followed through on her promises to execute the deed documents.  And Layton asserts that, because Toole's promise to convey the deed documents induced her to make the payments, "it is unjust for [her] to be deprived of the promised ownership interest in the property." Layton argues that equity requires that Toole's promise be enforced by awarding her an ownership interest in the property.

### b.    Analysis

#### i.    The Issue of Whether Toole Made a Promise that Entitled Layton to an Ownership Interest in the Property Was Actually and Necessarily Decided in the Partition Proceeding

¶ 43    The partition court was required to determine who held ownership interests in the property and completely adjudicate their rights.  *See* § 38-28-110, C.R.S. 2025; C.R.C.P. 105; *see also Bd. of Comm'rs v. Timroth*, 87 P.3d 102, 105 (Colo. 2004) (concluding that in partition actions, "if the evidence before the court makes [an] issue apparent, the court must reach that issue in order to grant

19

full and appropriate relief," even if the particular issue wasn't raised in the pleadings).

¶ 44    Layton's only claim against Toole is for promissory estoppel,[7] the basis of which is Layton's assertion that she and Toole had an agreement whereby Toole promised Layton an ownership interest in the property in exchange for Layton's payment of Toole's debt.  This is the same argument that Layton raised, seeking to intervene in the partition proceeding.  And because the partition court was required to completely adjudicate the ownership interests in the property, the partition court necessarily had to consider Toole's alleged agreement with Layton.  *See Tonko*, 154 P.3d at 405.

¶ 45    In her opening brief, Layton concedes that the commissioner took sworn testimony regarding whether there was such an agreement between Layton and Toole.  And the partition order reflects that, after considering the evidence, which included

---

[7] In her response to the motion to dismiss, Layton asserts that the partition court didn't have authority to decide her unjust enrichment claim against Toole.  Likewise, on appeal, Layton appears to argue that the court erred by dismissing an unjust enrichment claim against Toole.  But Layton's complaint doesn't assert a claim for unjust enrichment against Toole.  And we may neither rewrite a pro se litigant's pleadings nor act as an advocate for a pro se litigant.  *People v. Cali*, 2020 CO 20, ¶ 34.

testimony from Toole and Layton, the commissioner explicitly rejected the notion that an agreement existed between Layton and Toole that entitled Layton to an ownership interest in the property.

¶ 46 Layton acknowledges that the commissioner determined that her "claim of ownership did not exist at the time the [partition order] was issued." Yet she argues in her opening brief that even if the partition court determined that she didn't have an ownership interest when it issued the partition order, "a promise of an ownership interest subsequent to the entry of the order" should allow her to proceed on her claim in this case. We disagree.

¶ 47 Layton doesn't direct us to, nor have we found, any place in the record where she alleges facts that, accepted as true, could support the conclusion that Toole promised to convey to Layton an ownership interest in the property *after* the entry of the partition order. *Brighton Sch. Dist. 27J v. Transamerica Premier Ins. Co.*, 923 P.2d 328, 335 (Colo. App. 1996) ("[I]t is not the duty of the reviewing court to search the record for evidence to support bald assertions."), *aff'd*, 940 P.2d 348 (Colo. 1997). Rather, the general allegations in her complaint only reference facts leading up to the partition proceeding.

¶ 48    Thus, the primary factual issue underlying Layton's promissory estoppel claim against Toole is whether Toole promised Layton an ownership interest in the property in exchange for Layton's payment of Toole's property-related debts.  The partition court determined that no such promise existed.  This factual issue is identical to the issue Layton raised in the partition proceeding, and, for the foregoing reasons, we conclude that it was actually and necessarily decided in the partition proceeding.

### ii.    Layton Was in Privity with Toole

¶ 49    "Privity between a party and a non-party requires both a substantial identity of interests and a working or functional relationship in which the interests of the non-party are presented and protected by the party in the litigation." *Foster*, ¶ 24 (citation modified).

¶ 50    Layton's complaint and her motion to intervene both describe at length the various ways that she and Toole have been intertwined with respect to the property.

¶ 51    In addition to asserting that she had an ownership interest in the property based on Toole's alleged promise, Layton asserts that she and Toole had hoped to operate a restaurant on the property,

22

had formed SA Lyons for that purpose, and had worked to address various maintenance issues at the property. She also alleges that she was unsuccessful in getting the Main 434 defendants to reimburse her for expenditures related to repairing the property. Layton made these same allegations in her motion to intervene in the partition proceeding. And evidence considered by the commissioner demonstrates that Layton and Toole maintained a working relationship throughout the partition proceeding. Indeed, the commissioner found that the evidence indicated that Layton was paying the attorney who represented Toole in the partition proceeding.

¶ 52 Thus, the record clearly demonstrates that Layton and Toole were in privity with each other in the partition proceeding.

iii. The Partition Order Was a Final Judgment on the Merits

¶ 53 Layton doesn't dispute that the partition order was a final judgment on the merits that resolved the parties' disputes regarding who had a cognizable ownership interest related to the property. Nor do we have a basis to conclude otherwise. *See Nat. Energy Res. Co. v. Upper Gunnison River Water Conservancy Dist.*, 142 P.3d 1265, 1282 (Colo. 2006) (noting that an order is a final judgment for

23

issue preclusion purposes when it leaves nothing further for the court to do in order to completely determine the rights of the parties).

#### iv. Layton Had a Full and Fair Opportunity to Participate in the Partition Proceeding

¶ 54    Layton asserts that she didn't have a full and fair opportunity to litigate her claim that Toole promised her an ownership interest in the property after she was denied intervention in the partition proceeding. We aren't persuaded.

¶ 55    Whether the party against whom issue preclusion is asserted had a "full and fair opportunity to litigate" in an earlier proceeding depends on the extent to which the issues are identical, whether the party had sufficient incentive to "vigorously" litigate the issues, and whether the remedies and procedures of the first proceeding are substantially different from those of the second proceeding. *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 24; *see also Byrd v. People*, 58 P.3d 50, 55 (Colo. 2002) (noting that if the prior proceeding's purposes and procedures are significantly different than those in the current proceeding, the "full and fair opportunity to litigate" element isn't satisfied).

24

¶ 56    As already discussed, the issue of whether Layton had an ownership interest in the property based on Toole's alleged promise to transfer deed documents is identical to the issue raised in the partition proceeding.  Likewise, Layton had sufficient incentive and opportunity to vigorously litigate that issue in the partition proceeding as evidenced by her attempt to intervene, her participation as a witness, and her funding of Toole's attorney. That her efforts were unsuccessful does not mean she was deprived of the opportunity to participate.  And we conclude that the purposes, procedures, and remedies that were available in the partition proceeding are substantially similar to those available to Layton in her civil action.

¶ 57    For example, a partition action and a civil action asserting relief based on promissory estoppel are both subject to a preponderance of the evidence burden of proof.  *See* § 13-25-127(1), C.R.S. 2025 ("[T]he burden of proof in any civil action shall be by a preponderance of the evidence."); *see also Nicol v. Nelson*, 776 P.2d 1144, 1147 (Colo. App. 1989) (holding that a promissory estoppel claim must be established by a preponderance of the evidence). And both types of actions are governed by the Colorado Rules of

Civil Procedure. *See* § 38-28-104, C.R.S. 2025 (requiring the "process, practice, and procedure" of partition actions to comply with the rules of procedure in effect at the time of the proceeding); C.R.C.P. 1(a) (stating that the rules of civil procedure apply "in all actions, suits and proceedings of a civil nature, whether cognizable as cases at law or in equity, and in all special statutory proceedings").

¶ 58    Similarly, claims in both types of actions can be brought by third parties. *See* § 38-28-101, C.R.S. 2025 ("Actions for the division and partition of real or personal property or interest therein may be maintained by any person having an interest in such property."); *Hoff*, ¶ 32 (noting promissory estoppel applies to promises made to a third party). With respect to remedies, in a partition action, the court has authority to "make such orders as it may deem necessary to promote the ends of justice." § 38-28-110. And, in an action involving a promissory estoppel claim, a court has latitude to fashion an order that requires specific or partial performance or that awards damages, so long as the remedy is "fashioned carefully to achieve fairness to all parties in the circumstances of the particular case." *Kiely v. St. Germain*, 670

P.2d 764, 767-69 (Colo. 1983).  Finally, both types of actions are subject to appeal under C.A.R. 4 — a procedural right Layton took advantage of in the partition action.  *See RBL Fin. LLC*, No. 23CA1501, slip op. at ¶ 18.

¶ 59     Thus, having considered the allegations in Layton's complaint and associated documents referenced therein, *see Yadon*, 126 P.3d at 336, we conclude that Layton's promissory estoppel claim against Toole is issue precluded.

## 2. Layton Fails to State a Plausible Claim for Relief Against Landau for Promissory Estoppel

¶ 60     An alleged promise that provides mere assurances of fair treatment or other vague assurances are insufficient to support a claim for promissory estoppel; rather, the alleged promise "must be sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms." *Hoyt v. Target Stores*, 981 P.2d 188, 194 (Colo. App. 1998).

¶ 61     Layton alleges that Landau promised that "RBL was not seeking an ownership interest in the property but only wanted to be paid for the [note underlying the first deed of trust]."  Even accepting this allegation as true, Layton fails to explain — and we

fail to see — how Landau's promise not to seek an ownership interest in the property equates to Layton's assertion that she is entitled to an ownership interest in the property in the interest of justice. Said differently, even if Landau made such a promise, and reasonably should have expected his promise to induce Layton to pay the debt secured by the first deed of trust, which Layton then did, Layton hasn't adequately explained how enforcing Landau's promise results in her being awarded an ownership interest in the property. We reach this conclusion for two reasons.

¶ 62 First, Layton hasn't adequately explained which of Landau's actions amounted to "seeking an ownership interest in the property." Second, even if she had, there is nothing that links Landau's alleged promise to an obligation that would vest Layton with an ownership interest in the property if Landau's promise were enforced. To the extent that Layton asserts that the missing link is Toole's alleged promise to convey an interest in the property, that assertion fails for the reasons we've discussed.

¶ 63 Thus, we conclude that Layton's complaint fails to state a plausible claim for promissory estoppel against Landau, and the court didn't err by dismissing it. *See Carbajal,* ¶ 13.

### 3. Layton Fails to State a Plausible Claim for Relief Against RBL and Main 434 for Fraud

¶ 64   Layton alleges that RBL and Main 434 committed "fraud in retention of ownership interests" because they retained an ownership interest in the property despite having received a payment from her that fully satisfied the debt secured by the first deed of trust.

¶ 65   Layton provides no authority for the proposition that "fraud in retention of ownership" is a legally recognized basis for relief. And while the title of her claim isn't controlling, *see Alpha Spacecom, Inc. v. Hu*, 179 P.3d 62, 65 (Colo. App. 2007), Layton's allegations as to this claim don't enable us to determine the theory of fraud — misrepresentation or concealment — under which she is seeking recovery. *See Nielson v. Scott*, 53 P.3d 777, 779-80 (Colo. App. 2002) (comparing elements of fraudulent concealment with elements of fraudulent misrepresentation).

¶ 66   While we can broadly construe Layton's complaint, *Jones v. Williams*, 2019 CO 61, ¶ 5, we won't rewrite it for her, *People v. Cali*, 2020 CO 20, ¶ 34. *See also* C.R.C.P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall

be stated with particularity."). And because her complaint doesn't enable us to assess her theory of recovery with respect to fraud, *see Panzlau*, ¶ 50, that claim isn't plausible and the court properly dismissed it.

### 4. Layton Fails to State a Plausible Claim for Relief for Contractual Interference

¶ 67     Layton's eighth claim alleges that RBL and Main 434 interfered with contracts between Toole and tenants of the property. Layton says that Toole had lease agreements with two retail tenants from whom Toole received rent. Layton says RBL and Main 434 "threatened" the tenants with litigation, causing the tenants to withdraw from their leases, which in turn resulted in Toole losing $24,000 in rental income.

¶ 68     An essential element of an action for interference with the performance of a contract "is the existence of a contract between the plaintiff and a third party." *Grimm Constr. Co. v. Denv. Bd. of Water Comm'rs*, 835 P.2d 599, 601 (Colo. App. 1992). Nowhere in her complaint does Layton allege that *she* had existing contracts with either tenant; instead, she only alleges that *Toole* had contracts with the two tenants. She also doesn't allege that she

suffered an injury herself as a result of the tenants withdrawing from their leases, or that she is bringing this claim on Toole's behalf because Toole can't exercise her own right to bring a claim based on contractual interference.

¶ 69     Thus, Layton hasn't demonstrated that she has standing to bring this claim, and it therefore fails as a matter of law. *Aurora Pub. Schs. v. A.S.*, 2023 CO 39, ¶ 25 (noting that standing is a jurisdictional prerequisite, the purpose of which is "to test a litigant's right to raise a legal argument or claim"); *see also State Bd. for Cmty. Colls. & Occupational Educ. v. Olson*, 687 P.2d 429, 435 (Colo. 1984) (noting that a plaintiff may assert the rights of third parties not before the court if the plaintiff can demonstrate (1) an injury in fact; *and* (2) at least one of the following factors: the presence of a substantial relationship between the plaintiff and the third party, the difficulty or improbability of the third party's ability to assert their own rights, or the need to avoid dilution of third party rights in the event standing is not permitted).

### 5.     Layton's Remaining Claims Aren't Barred by Issue Preclusion

¶ 70     We acknowledge that many of the allegations underlying Layton's remaining claims were raised in the partition proceeding.

However, we conclude her remaining claims aren't barred by issue preclusion because the Main 434 defendants haven't shown that those issues were actually decided in the partition proceeding.[8]

### a. Layton's Unjust Enrichment Claims

¶ 71 Claims one, two, four through seven, and nine of Layton's complaint (collectively, the unjust enrichment claims) allege in substantially similar language that RBL and Main 434 have been "unjustly enriched" by Layton's payments, either with respect to Toole's debts or the repairs Layton made to the property to render the property suitable for use. Layton raised similar issues in the partition proceeding.

¶ 72 "[A] party claiming unjust enrichment must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008). Unjust enrichment claims

---

[8] We don't address whether the Main 434 defendants have established the remaining elements of issue preclusion because they have failed to establish the first element. *See City of Thornton v. Bijou Irrigation Co.*, 926 P.2d 1, 76 (Colo. 1996) (declining to address remaining elements of an affirmative defense when defendant failed to establish one element).

require trial courts to make extensive factual findings about particularized circumstances. *Id.* at 1140. The findings in the partition order, while generally thorough, don't demonstrate that the commissioner actually considered whether RBL and Main 434 were unjustly enriched by Layton's payments, even if those payments didn't result in Layton obtaining an interest in the property.

### b. Layton's Deceptive Trade Practices Claim

¶ 73 Layton's final claim asserts that the Main 434 defendants engaged in unfair or deceptive trade practices in violation of the Colorado Consumer Protection Act (CCPA), sections 6-1-101 to -116, C.R.S. 2025, by filing various "false" disclosure statements.

¶ 74 The CCPA authorizes civil actions for claims arising out of alleged deceptive trade practices, so long as such claims are brought within the applicable limitations timeframes. §§ 6-1-113, -115, C.R.S. 2025. A person engages in "deceptive trade practices" by, among other things, "knowingly or recklessly mak[ing] a false representation as to the source, sponsorship, approval, or certification of . . . property" or "knowingly or recklessly engag[ing] in any unfair, unconscionable, deceptive, deliberately

33

misleading, false, or fraudulent act or practice."  § 6-1-105(1)(b), (rrr), C.R.S. 2025.

¶ 75    To prove a claim of unfair or deceptive trade practices under the CCPA, a plaintiff must show that (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of the defendant's business; (3) the challenged practice significantly impacted the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered an injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury. *Wheeler v. T.L. Roofing, Inc.*, 74 P.3d 499, 506 (Colo. App. 2003).

¶ 76    Before the partition proceeding, the parties were involved in several foreclosure actions involving the property.  *See RBL Fin. LLC*, No. 23CA1501, slip op. at ¶¶ 11-15.  Layton alleges that the history of transactions involving the property show that the Main 434 defendants filed "false" statements in the foreclosure actions to collect money that wasn't yet "due and owing."

¶ 77    Layton made substantially similar factual allegations in the partition proceeding.  But the record does not reflect that this specific allegation — that the Main 434 defendants' actions

amounted to deceptive trade practices that impacted the public —
was raised, nor is there information from which we can conclude it
was actually decided in the partition proceeding.

### 6. The Court Erred by Applying the Doctrine of Laches to Layton's Claims

¶ 78    The Main 434 defendants also asserted laches as an
affirmative defense to Layton's claims. In support of that defense,
they argued that (1) Layton knew of the facts giving rise to her
claims no later than November 12, 2021, when she filed the motion
to intervene in the partition proceeding; (2) it was "manifestly
unreasonable" for Layton to wait for the outcome of the partition
proceeding to then "drag all the parties who just completed their
litigation through another round of litigation"; and (3) the Main 434
defendants incurred significant costs over the course of multiple
years as a result of Layton's unreasonable delay.

¶ 79    Laches is an equitable doctrine that may be asserted to deny
relief to a party who has engaged in "unconscionable delay" in
enforcing their own rights to the detriment of another. *See People v.
Garcia*, 2021 COA 65, ¶ 38, *aff'd*, 2023 CO 41. "A laches defense
comprises three elements: (1) full knowledge of the facts by the

party against whom the defense is asserted; (2) unreasonable delay by that party in pursuing an available remedy; and (3) intervening reliance by and prejudice to the party asserting the defense." *In re Marriage of Kann*, 2017 COA 94, ¶ 40.

¶ 80    The party asserting laches bears the burden of establishing its elements. *See Keller Cattle Co. v. Allison*, 55 P.3d 257, 260 (Colo. App. 2002). As an equitable defense, the determination of whether laches applies is committed to the sound discretion of the district court, and we review the court's determination for abuse of discretion. *Bristol Co., LP v. Osman*, 190 P.3d 752, 755 (Colo. App. 2007); *see also Lewis*, 189 P.3d at 1141 ("When considering equity claims, a trial court's discretion extends to both the factual basis and application of the correct test."). A court abuses its discretion when its ruling is "manifestly arbitrary, unreasonable, or unfair" or when it misapplies the law. *Rains v. Barber*, 2018 CO 61, ¶ 8 (citation omitted).

¶ 81    To succeed on their laches defense, the Main 434 defendants were required to establish each of the elements of laches based on the allegations in Layton's complaint alone. *See Prospect Dev. Co.*, ¶ 14. Said differently, it was the Main 434 defendants' burden to

demonstrate that, accepting Layton's factual allegations as true and construing them in her favor, Layton unconscionably delayed in bringing her claims, which in turn prejudiced them. *See id.*; *see also Houser v. CenturyLink, Inc.*, 2024 COA 96, ¶ 22 (noting that we apply the same standard as the district court on review) (*cert. granted* Mar. 10, 2025); *cf. Allison*, 55 P.3d at 260 (holding that a party asserting laches on summary judgment must establish that the elements of laches have been met and demonstrate the absence of any genuine issue of material fact).

¶ 82     Regarding the first element of laches, we have no trouble concluding that Layton had full knowledge of the facts upon which the Main 434 defendants' laches defense is based given the extensive factual allegations she makes in the complaint. However, we conclude that the Main 434 defendants haven't met their burden with respect to the second element of laches.

¶ 83     Whether a delay is unreasonable is a factual question that depends on the circumstances of each case. *Kann*, ¶ 42. To decide whether a delay is unreasonable, "a trial court must weigh not only the length of time but also the attendant circumstances." *Id.* at ¶ 43. This can include consideration of the delaying party's "assent

37

to or acquiescence in" the acts of an opposing party that the delaying party now complains about, any waiver of rights by the delaying party, and the nature of the involved property interests. *Id.*

¶ 84     In the motion to dismiss, the Main 434 defendants merely assert — without reference to any specific factual allegations in Layton's complaint — that it was unreasonable for Layton to wait until the partition proceeding concluded to assert her claims. But accepting Layton's factual allegations as true, the earliest her claims could have accrued was May 2021, when she made the first of several payments to RBL on Toole's behalf to prevent RBL from foreclosing on the property. And her complaint was filed in February 2023, which was within the applicable statute of limitations for each of her claims. *See* § 6-1-115, C.R.S. 2025 (establishing three-year statute of limitations for actions alleging unfair or deceptive trade practices absent extenuating circumstances); § 13-80-101(1)(h), C.R.S. 2025 (establishing three-year statute of limitations for actions based on contracts, fraud, or "taking, detaining, or converting goods or chattels"); § 13-80-102(1)(a), C.R.S. 2025 (establishing two-year statute of

limitations for tort actions involving interference with relationships); *Sterenbuch v. Goss*, 266 P.3d 428, 437 (Colo. App. 2011) (unjust enrichment is a quasi-contract form of relief to which the three-year statute of limitations applies); *Marquardt*, 200 P.3d at 1129 (promissory estoppel is based in contract principles).

¶ 85    We recognize that the length of a party's delay is not determinative of whether the delay was unreasonable. *See Kann*, ¶ 43. But the Main 434 defendants' motion to dismiss fails to identify facts that could support the court's determination that Layton unconscionably delayed in bringing her claims. Instead, the Main 434 defendants make generalized, argumentative conclusions that Layton acted unreasonably and in bad faith by waiting until the partition proceeding was over to assert her claims in this case.

¶ 86    These unsupported arguments are insufficient to satisfy the second element of laches.[9] Moreover, in its dismissal order, the court failed to provide any analysis to support its determination that Layton — despite having filed her complaint within the

---

[9] Because the Main 434 defendants have failed to establish the second element of laches, we don't address whether they established the third element. *See Bijou Irrigation Co.*, 926 P.2d at 76.

applicable statutes of limitation — unreasonably delayed in bringing her claims. And while a court generally isn't required to make specific findings in granting a Rule 12 motion, *see* C.R.C.P. 52, the court's lack of findings is untenable here because the court was required to accept Layton's factual allegations as true at this stage of the proceedings. *Cf. Cullen v. Phillips*, 30 P.3d 828, 833 (Colo. App. 2001) (noting that disputed issues of material fact precluded court's grant of summary judgment in defendant's favor based on laches).

¶ 87    The court thus abused its discretion by concluding, based on the complaint's factual allegations, that Layton unreasonably delayed in bringing her claims, and its application of laches to her claims was therefore error.

7.    Whether the Court's Errors Were Harmless

¶ 88    As discussed, we conclude that the court erred by dismissing Layton's claims, other than her promissory estoppel claim against Toole, based on issue preclusion and laches. That said, we may disregard any error not affecting the substantial rights of a party. *See* C.R.C.P. 61; *Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010) (a harmless error doesn't affect a party's substantial rights because it

40

neither substantially influences the outcome of the case nor impairs the basic fairness of a trial and is therefore not grounds for reversal).

¶ 89 Because we've concluded that the court's dismissal of Layton's claims for fraud, contractual interference, and promissory estoppel as to Landau was appropriate on alternate grounds, any error by the court in also dismissing those claims based on issue preclusion and laches was harmless.

¶ 90 Conversely, because there weren't alternate grounds for dismissing Layton's claims for unjust enrichment and unfair or deceptive trade practices, the court's dismissal of those claims based on issue preclusion and laches was reversible error.

¶ 91 Thus, on remand, the court must reinstate Layton's unjust enrichment claims and her unfair or deceptive trade practices claim. All of her other claims remain dismissed.

¶ 92 Additionally, given the lengthy and litigious nature of the proceedings between these parties, the parties are encouraged to be meticulous in how they present their arguments to the court on remand, and the court is encouraged to make particularized findings and conclusions of law sufficient to enable any future

appellate review. *See Supply Ditch Co. v. Elliott,* 15 P. 691, 693 (Colo. 1887) ("[A]rgumentative pleading is bad, under all systems of pleading in this country."); C.R.C.P. 12(f) ("[T]he court may order any redundant, immaterial, impertinent, or scandalous matter stricken from any pleading, motion, or other paper."); *see also In re Marriage of Humphries*, 2024 COA 92M, ¶ 43 (noting that a district court must make sufficiently explicit factual findings to enable an appellate review); *Carousel Farms Metro. Dist. v. Woodcrest Homes, Inc.*, 2019 CO 51, ¶ 18 (noting that expecting appellate courts to "take a fine-toothed comb" to the disputes of a case contributes to appellate docket backlogs).

## III. Attorney Fees and Costs

¶ 93    The Main 434 defendants request their appellate attorney fees and costs under section 13-17-201, C.R.S. 2025.  Because the Main 434 defendants have only partially prevailed on appeal, we decline to award them their fees under section 13-17-201.  *See Colo. Special Dists. Prop. & Liab. Pool v. Lyons*, 2012 COA 18, ¶ 60 (noting that section 13-17-102(2), C.R.S. 2025, doesn't authorize recovery if a defendant obtains dismissal of some, but not all, of a plaintiff's tort claims).

¶ 94    The Main 434 defendants also request their fees under section 13-17-102(2) because they assert Layton's appeal is frivolous. Section 13-17-102(6) governs the court's authority to assess attorney fees against a self-represented litigant and provides that attorney fees shall not be assessed against a party appearing without a lawyer "unless the court finds that the party clearly knew or reasonably should have known that the party's action . . . was substantially frivolous, substantially groundless, or substantially vexatious."

¶ 95    An appeal may be frivolous if it is "taken in a case in which 'the judgment by the tribunal below was so plainly correct and the legal authority contrary to appellant's position so clear that there is really no appealable issue.'" *Castillo v. Koppes-Conway*, 148 P.3d 289, 292 (Colo. App. 2006) (citation omitted). Despite the protracted litigation between the parties, under the specific circumstances resulting in this appeal — that is, the court's wholesale adoption of the arguments contained in the Main 434 defendants' motion to dismiss, which we have concluded wasn't appropriate — we also decline to award the Main 434 defendants their attorney fees under section 13-17-102.

## IV. Disposition

¶ 96 The judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

JUDGE WELLING and JUDGE BROWN concur.